JOHN E. BRYAN et ux. v. A. G. McCASKILL, GEORGE A. BURR. et al.; ARCHILUS E. ROBERTSON et ux., Appellants.

In Banc, November 22, 1920.

1. **QUIETING TITLE: Controversy Between Defendants.** Section 2535, Revised Statutes 1909, authorizes any two defendants, brought in by plaintiff in a suit to ascertain and determine title to land, to make up an issue with each other and to try it as adversary parties and secure its determination by the court, although, before entry of judgment, plaintiff disclaims title and leaves only the defendants as parties.

2. ———: **Former Judgment for Plaintiff: Effect of Reversal Upon Defendants.** Where plaintiffs obtained judgment against two defendants in a suit to quiet title, and on appeal it was ruled that the plaintiffs' title was invalid for any purpose against either or both defendants, and the judgment was reversed and the cause remanded with directions to grant defendants a new trial, there

was no adjudication of the rights of defendants as against each other.

3. ————: **Title Subject to Trust: Merger: Sale Under Execution.** Where M. was desirous of purchasing timber on land which Davis claimed, and they were advised by counsel that the title was in the county, and it was then agreed between them that M. would advance $1.25 per acre, procure a patent from the county to himself, and convey to Davis, reserving the right to remove the timber within five years, and on February 8th the patent was issued and duly recorded, and on June 8th M. conveyed to Davis, reserving the right to remove the timber within five years, but prior thereto and on April 23rd judgment was obtained in the circuit court against M., on which execution issued nearly three years later and the land was sold, the court, in deciding whether Davis or the purchaser at the execution sale acquired the title, will assume that the legal title alone is involved, for if M. held the title subject to a constructive trust in favor of Davis at the time he conveyed to Davis on June 8th, such trust became merged in the legal title conveyed to Davis by the deed which executed it.

4. **RESULTING TRUST: Consideration.** Where Davis claimed to own land worth ten dollars an acre and was sued by another claimant, and losing in the trial court appealed, and while the appeal was pending was advised by counsel that the title was in the county and thereupon entered into an agreement with M. by which M. was to advance $1.25 per acre, secure a patent from the county, then convey to Davis, reserving the timber and the right to remove it within five years, and said patent having been issued, the moving cause for its issuance upon the payment of $1.25 per acre being that the county had previously attempted by ineffectual patent to convey to Davis, and when M. had conveyed to Davis, reserving the timber, he dismissed his appeal, having expended $900 in trying to perfect his title, there was a trust in favor of Davis, supported by a real money consideration.

5. ————: **Oral Declaration: Statute of Frauds: Created by Others: Ownership of Consideration.** Although Section 2868, Revised Statutes 1909, declares that, "all declarations or creations of trust or confidence of any lands . . . shall be manifested and proved by some writing signed by the party who is, or shall be, by law, enabled to declare such trusts," Section 2869 also declares that "when any conveyance shall be made of lands . . . by which a trust or confidence may arise or result by implication of law, such trust or confidence shall be of like force as the same would have been if this act had not been made;" and that section recognizes that all trusts are not expressly declared or created by the donors.

but that some trusts are created by law in the interest of equity and good conscience, which recognize the true ownership of land beneath the formal deeds by which the law expresses it. The true ownership, although not disclosed by the muniments of title, may be given effect by recognizing the consideration upon which the title rests. In such case the ownership of the land follows the ownership of the consideration, and the grantee is held to be a trustee for that purpose.

6. ———: Statute of Frauds: Exemptions: How Far Applicable. Resulting trusts growing out of interest, legal or equitable, in the consideration paid for the acquisition of the legal title, were not the only ones exempted from the operation of the Statute of Frauds by Section 2869, Revised Statutes 1909. That section applies to all conveyances made under such circumstances that a trust should arise in respect thereto. Included in its exemptions are constructive trusts, arising *ex maleficio*, enforced on the ground that to apply the statute would make it an instrument of fraud.

7. ———: Deception: Under the Guise of Friendship. Courts of equity do not permit a person to interpose the Statute of Frauds to complete title to property, procured in the guise of friendship and a good will for another and under a promise to use it in the performance of friendly offices for such other.

8. ———: ———: Oral Agreement. Where M. agreed with Davis to purchase land from the county and then convey it to Davis, reserving the timber thereon for himself, although the agreement was oral, if the consideration above the mere purchase price of $1.25 per acre eminated from Davis, and it was recognized by both the county court and M. that Davis had a valuable interest therein, and M. conveyed to Davis, after patent issued, by a deed expressing the agreement, it will not be held, in favor of an execution purchaser under a judgment rendered before M. conveyed to Davis, that the duty of M. to convey depended upon an oral contract made before the title was acquired and was therefore an express trust and void under the Statute of Frauds. But it is *held*, that a constructive trust in favor of Davis existed from the time M. acquired the title from the county, and as the purchaser at the execution sale under the judgment rendered against M. before he executed said trust knew all about its existence and was in no sense an innocent purchaser, he did not take the title.

9. ———: How Created: Oral Agreement. An agreement of an agent to convey land acquired by him for another does not create a resulting trust, but simply goes to the method by which the trust is to be executed. The refusal of the agent to execute his oral agreement does not destroy the equitable right.

10. ———: Claimants to Land: Pooling Interest: Constructive Trust: Innocent Purchaser. Davis claimed to own land worth ten dollars an acre and M. desired to acquire the timber thereon, and being advised that the title was in the county they pooled their interests and orally agreed that M. should advance $1.25 an acre and acquire a patent from the county and then convey to Davis, reserving the timber and the right to remove it within five years, and M. did advance the money and acquired a patent from the county. *Held*, that M. took the title subject to a constructive trust in favor of Davis, and a purchaser at an execution sale under a judgment rendered against M. before M. conveyed to Davis, being in no sense an innocent purchaser, but having full knowledge of the existence of the trust in favor of Davis from its inception, took nothing by his sheriff's deed.

Appeal from Mississippi Circuit Court.—*Hon. Frank Kelly,* Judge.

REVERSED AND REMANDED *(with directions).*

*Andrew W. Hunt.* for appellants.

(1)   The circuit court erred, after having stated that Robertson and wife had proved the facts pleaded, that such pleading and facts were within the Statute of Frauds (R. S. 1909, sec. 2868), because (a) McKinnics, February 8, 1908, paid the $600 to Stoddard County for its patent out of the proceeds of the timber on the land, which he had bought from Davis, whose title, although but a shadow, he could not dispute, which $600 was had by him through Dunbar, Gant & Wright, for the timber, to whom he had sold it under the contract he had made with Davis, while the action of Bryan and wife v. Gardner and Davis was pending and undetermined in the Stoddard Circuit Court, the last contract (that of February 7, 1908) being but a continuation of the contract of 1906; (b)   because Davis fully performed his part of the contract by appearing before the Stoddard Circuit Court October 7, 1908, the day prior to the issuance of the patent, and assigning his claim to the land, which, although but a shadow, connected with the county through

its grant to Phelan & Hicks in 1869, and McKinnies fully performed his part of the contract by reconveying the land to Davis, June, 8, 1908; and (c) because a court of equity will not allow that statute to aid in perpetrating a fraud. R. S. 1909, sec. 2869; Rose v. Bates, 12 Mo. 30; State ex rel. v. Cruzen, 211 S. W. 880; Witte v. Storm, 236 Mo. 470; Leahey v. Witte, 123 Mo. 207; Phillips v. Jackson, 240 Mo. 310; Butler v. Carpenter, 163 Mo. 597; Erwin v. Holderman, 92 Mo. 333; Condit v. Maxwell, 142 Mo. 266; Wilsett v. Wilsey, 141 Mo. 200; Jones v. Howard, 142 Mo. 117; Darling v. Potts, 118 Mo. 506; Grumley v. Webb, 44 Mo. 444. (2) In view of the facts pleaded by Robertson and wife, McKinnies never owned such interest in the land, excepting its timber, as was vendible on execution against him. R. S. 1909, sec. 2192. (3) Nor was the Sibole judgment of April 23, 1908, a lien on other than the timber. R. S. 1909, secs. 2124, 2125. (4) This suit was instituted July 26, 1911, and Geo. A. Burr bought the interest in the land under execution sale October 6, 1911, and cannot make it available in this suit. Chilton v. Nickey, 261 Mo. 232; Finley v. Bobb, 144 Mo. 403; Romine v. Haag, 178 S. W. 147; Norcum v. D'Oench, 17 Mo. 98. (5) The purchase of land of the value of $12,000, at execution sale for $75 connotes fraud; and especially is this true when the sale occurred at 9 o'clock in the forenoon. Mangold v. Bacon, 237 Mo. 496; Shoe Co. v. Wyble, 211 Mo. 675; Stephenson v. Kilpatrick, 166 Mo. 262; Stoffel v. Schroeder, 62 Mo. 147; Vail v. Jacobs, 62 Mo. 130; Holdsworth v. Shannon, 113 Mo. 508; Goode v. Comfort, 39 Mo. 313.

*Henson & Woody* for respondents.

(1) All of the parties to this controversy were parties defendant in the case of Bryan v. McCaskill, 175 S. W. 961. They presented their several titles to the court and the court passed upon them deciding that Burr had the title. That decision is a final determination of the matters in issue here. When the Bryans disclaimed

title, the trial court should have rendered judgment in favor of Geo. A. Burr. Bryan v. McCaskill, 175 S. W. 961; Keaton v. Jorndt, 259 Mo. 179; Griffin v. Nichols, 224 Mo. 291; Emmert v. Aldridge, 231 Mo. 124; Armor v. Frey, 253 Mo. 447; Stone v. Railroad, 261 Mo. 61; Toler v. Edwards, 249 Mo. 161. (2) Plaintiffs are not entitled to recover on the theory that a trust existed between McKinnies and Davis, and that McKinnies held the title in trust for Davis, for the following reasons: (a) Because the trust sought to be established, if any existed, is an express trust and is void because not manifested or proven by a written instrument, or instruments. R. S. 1909, sec. 2868; Stevens v. Fitzpatrick, 218 Mo. 708; Dexter v. McDonald, 196 Mo. 373; Heil v. Heil, 184 Mo. 665; Hunter v. Biggs, 254 Mo. 28; Wolfskill v. Wells, 154 Mo. App. 302; Stevenson v. Haynes, 220 Mo. 199; Patterson v. Patterson, 200 Mo. 335; Hillman v. Allen, 145 Mo. 638; Shelton v. Harrison, 184 Mo. App. 417. (b) Because even if it be, as contended, that the trust sought to be established is a constructive trust, still plaintiffs cannot recover for they have failed to prove the same by such clear, strong, unequivocal and positive proof as to leave no doubt in the mind of the chancellor that such a trust was intended by the parties. And this is especially true in view of the fact that no part of the purchase price was paid with the money of Davis, but was all paid out of the money of McKinnies. Chapin v. Cherry, 243 Mo. 375; Watson v. Payne, 143 Mo. App. 726; Brinkerhoff v. Juden, 255 Mo. 698; Derry v. Fielder, 216 Mo. 176; Curd v. Brown, 148 Mo. 82; Aeby v. Aeby, 192 S. W. 97; Shelton v. Harrison, 184 Mo. App. 418; Ogdon v. Auer, 184 S. W. 72; Williams v. City of Hayti, 184 S. W. 473; Seaman v. Seaman, 181 S. W. 24; Brooks v. Roberts, 195 S. W. 1021; Dowd v. Bond, 199 S. W. 956; Raymond v. Love, 180 S. W. 1058. (c) Because, so far as this record discloses, Burr, ignorant of any trust, if in fact there was one, paid his money for this land at a public sale and it would be inequitable to

inforce said alleged trust against him.  Derry v. Fielder, 216 Mo. 176.  (d) Upon this record, Burr was a purchaser without notice and he should be protected.  Davis, even if he had any rights in this land, equitable or otherwise, permitted McKinnies to remain in possession and hold himself out to the word as the true owner, and the Robertsons, holding under him, should not now, in view of the fact that Burr was a purchaser without notice, be permitted to recover.  Grove v. Robards, 36 Mo. 523;  White v. Storm, 236 Mo. 470;  Dexter v. McDonald, 196 Mo. 373. (e)  Because the testimony conclusively shows, and it is conceded by all parties, that Stoddard County owned the land, and when McKinnies purchased from the county, he acquired title both to the land and the timber.  If he did agree to convey the land to Davis for the timber, and a trust relation was created between the parties, it was without consideration, voluntary and incomplete, and a court of equity will not aid in its enforcement. Harding v. Trust Co., 207 S. W. 68;  Brannock v. Magoon, 141 Mo. App. 316;  Taylor v. Welch, 168 Mo. App. 223; Watson v. Payne, 143 Mo. App. 72.  (3) Considering the physical condition of the land at the time, the fact that it had practically no market value without the timber, the fact that the McKinnies title was considered worthless, and the absence of fraud on the part of the purchaser, the price paid at the sale by the sheriff was not so grossly inadequate as to render the sale void on that account. Phillips v. Stewart, 59 Mo. 491;  Knoop v. Kelsey, 121 Mo. 646;  Kearney v. Bockler, 143 Mo. 60;  Briant v. Jackson, 99 Mo. 585;  Daugherty v. Gangloff, 239 Mo. 649;  Boyd v. Wiley, 124 U. S. 98, 31 L. Ed. 369.

BROWN, C.—On July 26, 1911, Bryan and wife filed their petition in the Stoddard Circuit Court for an adjudication of title to the north half and southeast quarter of Section 10 in Township 28 of Range 11 in said county, against A. G. McCaskill, Achilus E. Robertson and Florence B. Robertson his wife, George A. Burr, R. E. L. Johnson, Mary E. Holmes, and several others who

have disappeared from the record, in which plaintiffs claimed title in fee by the entirety to the 480 acres, and charged that the defendants claimed some title or interest therein. Robertson and wife on September 29, 1911, answered, claiming an estate in fee by the entirety in the north half of the section, and on October 22, 1911, Holmes answered claiming the north half of the southeast quarter in fee simple. Johnson and Burr answered jointly on the same day, claiming a like title in the south half of the said quarter, and Burr answered at the same time claiming the north half of the section by fee simple title. This, according to the testimony of defendant, Burr was a friendly suit.

The cause was tried in said court on December 7, 1911, resulting in a judgment for the plaintiff declaring and quieting his title to the entire tract. From this an appeal was taken by the answering defendants Burr, Johnson and the Robertsons to this court, where the judgment of the Circuit Court was, on March 2, 1915, reversed, and the cause remanded to the Stoddard County Circuit Court "with directions to the trial court to set aside the judgment rendered in favor of plaintiffs, to grant defendants a new trial, and to proceed with the cause thereafter in accordance with the views heretofore expressed and as modified." [175 S. W. l. c. 966.] The title of defendants was deraigned through a decree of the St. Louis Circuit Court of April 13, 1888, in the case of Charles P. Chouteau v. Cairo & Fulton Railroad Company, Henry H. Bedford and others, which the plaintiffs desired an opportunity to impeach for want of jurisdiction of the subject-matter. This court gave them an opportunity to do so, if they could, in the court to which the cause was remanded. It turned out that the infirmity they suspected did not exist, so that the judgment for appellants stood unaffected in that respect.

Up to this time no issue had been made between the several defendants, but all had apparently joined hands in the circuit court as well as in this court to defeat the plaintiffs.

Upon the return of the case to the Stoddard Circuit Court the Robertsons filed an amended answer which, after denying the title of plaintiffs, admitting their own claim of title and pleading that they were the owners of the north half of said section in fee and asking the judgment of the court accordingly, proceeded to plead as a special defense that one William D. McKinnies on February 8, 1908, received a patent for said land from Stoddard County upon payment of $1.25 per acre; that McKinnies was desirous to purchase the timber on the land, while Davis wanted the land, which he claimed to own. They were advised by counsel that the true title to the land was in Stoddard County, and not in Davis, and it was then agreed between them that McKinnies would advance the sum of $1.25 per acre and procure therefor a patent from the county to himself, and convey the land to Davis by deed, reserving the right to remove the timber within the period of five years. That on February 8, 1908, McKinnies paid said amount to the county and received the patent, which was duly recorded in the deed records of the county on the 22nd day of the same month, and thereby became seized of the land in trust for the purpose of said agreement, and afterward on June 8, 1908, joining with him his wife, made a deed conveying the same to Davis and reserving the right to remove the timber therefrom within five years, which deed was duly recorded on the 15th day of the same month.

That on April 23, 1908, one Joseph Sibole obtained judgment in the circuit court for said county for $1179.95 against McKinnies, on which an execution was issued on April 12, 1911, and delivered to the sheriff of said county, under which all the right, title and interest of McKinnies was sold by the sheriff at public sale on October 6, 1911, to the defendant Burr, and a sheriff's deed executed to him therefor for the consideration of $75, the amount of his bid. The answer sets up these facts with much detail, alleging fraud and conspiracy in the transaction for the purpose of extinguishing the

title of Davis, and the Robertsons, who obtained his title by mesne conveyances on July 3, 1909. It charges that the sheriff's deed constituted a cloud upon the title of said defendants, which it asked the court to remove by its judgment.

To this answer and cross-petition the defendant Burr answered on October 25, 1915, and in March following applied for a change of venue, which was granted to the Circuit Court for Mississippi County. The answer consists of a general denial and prayer for affirmative relief.

The cause was tried in the Mississippi County Circuit Court on February 15, 1917, resulting in a judgment for the defendant Burr, that he was the owner in fee of the north half of said Section 10 and that Robertson and wife had no interest in it. The plaintiff John E. Bryan having died before the trial, the judgment also went against the plaintiff Ida M. Bryan, who had filed a disclaimer of title, as well as against all other parties who had been defendants in the suit, and thereupon Robertson and wife, after motion for a new trial overruled, perfected their appeal to this court.

In 1906 the Bryans, husband and wife, instituted a similar action against R. F. Gardner and Alfred Davis only, to quiet title to the north half and southeast quarter of Section 10. They both answered, Davis claiming to be owner of the north half of the section and Gardner claiming the southeast quarter. This suit resulted in a judgment for the plaintiffs as prayed. An appeal was was taken by both defendants to this court and a *supersedeas* bond given. The cause stood upon our docket to October 17, 1910, when the case was called, and the appeal dismissed for failure to comply with the rules of this court.

On June 28, 1916, R. F. Gardner filed his petition in the Stoddard County Circuit Court in two suits, one against M. E. Holmes and William D. McKinnies, who claimed all the north half of the southeast quarter of

said Section 10, and the other against George A. Burr, R. E. L. Johnson and William D. McKinnies, as claimants of the south half of said quarter section, asking an adjudication of the title and interests of the respective parties and a judgment transferring any legal title the defendant or either of them might have in the premises so claimed to himself. On application of the defendants in each case the venue was changed to the Circuit Court of Mississippi County, where a trial was had, resulting in separate judgments that the legal title to the north half of the quarter section was in defendant Mary E. Holmes, and the legal title to the south half of said quarter section was in defendants Burr and Johnson. From these judgments the appellants appealed to this court, where they have been argued and submitted in connection with this case, which they resemble in most respects, although there are some differences to which we will refer in connection with their consideration.

The land involved in this case was swamp and overflowed lands granted to this State by Act of Congress, September 8, 1850, and by the State to Stoddard County and by Stoddard County to Lewis M. Ringer by patent, dated May 1, 1869, and by mesne conveyances thereafter culminated in a deed from Henry M. Bedford and wife to Bryan and wife, the plaintiffs, dated June 1, 1900, and duly recorded September 21, 1900. This is the title under which Bryan claimed in this suit until it was held void by this court in a former appeal in this case. [Bryan v. McCaskill, 175 S. W. 961.]

The title asserted by the defendants Robertson has its inception in a conveyance of the same land by Stoddar County to the Cairo & Fulton Railroad Company, dated March 11, 1859. The railroad company mortgaged these lands, and they were sold under a decree of foreclosure rendered by the St. Louis Circuit Court, and conveyed by a commissioner appointed by that court to Charles P. Chouteau, the plaintiff in said decree, by deed dated October 2, 1888, and on the 26th of the same month Chouteau conveyed the lands to Stoddard County.

284 Mo.—38

Stoddard County, by patent dated February 8, 1908, conveyed the land to W. D. McKinnies, under whom each party to this appeal claims.

The contest on the former appeal was between Bryan and wife, plaintiffs, on the one hand, and Burr and the Robertsons claiming by the same title, on the other hand. The Bryans were eliminated by that judgment and entered a formal disclaimer, and this contest is solely between Burr on the one hand and the Robertsons on the other.

I. No question has been made in this case as to the right of these defendants to proceed with the trial of their own controversy without the presence of the plaintiffs, who, before the entry of the judgment below, disclaimed title and left only the defendants as parties. Of these only three are left; George E. Burr on one side, and Robertson and wife on the other. It is unnecessary for us to determine which of these, if either, occupies the position of plaintiff or defendant. The statute under which the proceeding was inaugurated (R. S. 1909, sec. 2535) provides that the court "may award full and complete relief, whether legal or equitable, to the several parties, and to each of them, as fully and with the same force and effect as the court might or could in any other or different action brought by the parties, or any one of them, to enforce any such right, claim, interest, lien or demand, and the judgment or decree of the court when so rendered shall be as effectual between the parties thereto as if rendered in any other, different or separate action prosecuted therefor." It is plain that this authorized any two defendants brought in by the plaintiff to make up an issue with each other and to try it as adversary parties and secure its determination by the court. Originally they came to defend themselves against a common enemy. When that enemy surrendered at the last trial they continued the conflict between themselves.

The bone of contention was thrown to them and the stronger might take it.   It included whatever title Davis, the grantor of appellants, might have lost by the judgment in Bryan v. Davis and Gardner, in December, 1906.

What we have said should be confined strictly to the connection in which we have said it.   The parties here have voluntarily assumed the relation which has made them adversaries in this appeal, and in doing so were within their rights and are properly before us.   We do not wish to be understood as expressing any opinion as to whether they were or could have been forced into that position by the action of the plaintiffs in bringing their suit; or whether a plaintiff by bringing his suit under the section cited may make everybody parties and thereby force them to disclose all their differences with each other.   Many phases of this question may hereafter come before us, but none of them have obtruded themselves here.

II.   The respondent contends that the questions presented here were decided against these appellants by the previous judgment in this case.   [Bryan Former Adjudication. v. McCaskill, 175 S. W. 961.]   We do not understand that anything was then decided against them.   The case came before us upon the appeal of Burr and the Robertsons, respectively respondent and appellants now.   The suit of Bryan was against both of them, and the judgment of the trial court was against both.   This court passed upon the effect of the title under which the victorious plaintiffs held, and determined it to be invalid for any purpose against either or both the appellants.   Our judgment entered upon motion for rehearing with both Burr and Robertsons before us was as follows: "The cause is reversed and remanded with directions to the trial court to set aside the judgment rendered in favor of plaintiffs, to grant defendants a new trial, and to proceed with the cause thereafter in accordance with the views heretofore expressed and as

modified." The question then before us was the validity of the title of the plaintiffs, and we held they had no title and reversed the judgment on that ground without reference to the controversy between Burr and the Robertsons, leaving it for determination in a new trial. That issue alone is now before us.

III. Respondent claims under a sheriff's deed, dated October 6, 1911, upon judgment of the Stoddard Circuit Court in favor of one Sibole and against McKinnies, rendered April 23, 1908.

The appellants claim through a quitclaim deed made by McKinnies to Dr. Davis, dated June 8, 1908, and recorded June 15, 1908.

McKinnies is the common source of title, and the question is: Which of these deeds constitutes the better titles as between themselves? Although the contest has been directed principally to the ques-

Trust: Merger: Legal Title.

tion whether or not at the time of the rendition of the judgment through which the respondent claims, McKinnies held the title subject to a trust in favor of Davis, it is evident that such trust, if it existed in fact, would become merged in the legal title conveyed by the deed which executed it. We will, therefore, assume that the legal title alone is involved. With this explanation we will take up the questions relating to the capacity in which McKinnies held the title acquired under his patent from the county, at the time the judgment against him became a lien upon his interest in the land.

The land involved was among the swamp lands granted to the State of Missouri under the Act of Congress of December 28, 1850, and by the State of Missouri to Stoddard County. The devolution of this title was fully stated by the court in the former appeal, and it is unnecessary to our present purpose to repeat it, except to say it left the county in two chains, one of which began in a conveyance by Alfred Eltzroth, a commissioner appointed by the county court for that purpose, to Lewis

M. Ringer, dated May, 1869, and ended in the deed under which the plaintiffs claimed from Bedford and wife to John E. Bryan and Ida M. Bryan his wife, dated June 11, 1900. The other began with a patent to the Cairo & Fulton Railroad Company, dated March 14, 1869, and, passing through the county to W. D. McKinnies by patent, dated February 8, 1908, went from him to Alfred Davis by deed, dated June 8, 1908, reserving the timber standing on the land to be removed within five years. Also a sheriff's deed to respondent Burr under execution issued April 12, 1911, upon a judgment in favor of Joseph Sibole and against McKinnies, rendered April 23, 1908. This deed recites a levy made on April 22, 1911.

At and before the issue of the patent to McKinnies on February 8, 1908, the county was in the position of having granted this same land to Ringer by patent, dated May 1, 1869, and reacquired it by conveyance from Chouteau, dated October 26, 1888. The title of the county through Chouteau was held by us in the former appeal to be paramount to the title of the Bryans through the patent to Ringer and it is this holding which left the case without plaintiffs by the disclaimer of Mrs. Bryan.

The conveyance to Ringer, a judgment creditor of the county, was made in pursuance of an arrangement called in this record the Phelan-Hicks compromise, from the names of the lawyers employed for that purpose by the Stoddard County Court. It is natural that the county, through its court, should feel reluctant, after having once taken pay for this land from Ringer and other purchasers under his judgment, to sell it again without giving them an opportunity to recoup, and the evidence shows that these purchasers were, so far as might be, given preference in the acquisition of the Chouteau lands. Dr. Davis claimed an interest through the Ringer purchase, the exact nature of which does not clearly appear in this record. In 1906, the Bryans sued Davis, with whom they impleaded Gardner, to quiet their title to this land, which resulted in a judgment for plaintiff,

which was, as we have already said, appealed to this court, where it rested until October 17, 1910, when it was dismissed.

We have made this statement of the conditions surrounding this transaction in 1908 that they may be considered in so far as they explain the transaction in which the patent to this land was issued to McKinnies, and from which the appellants now claim that a trust resulted to Davis, their grantor. McKinnies up to that time claimed no interest in the land, nor was he in any way connected with any title growing out of the Phelan-Hicks compromise. He simply had a saw mill, and desired to purchase the timber standing on the land, with sufficient time in which to remove it, and for that reason approached Davis as the party with whom to deal. He promised Davis, when the first suit was instituted against him by Bryan, to pay the costs and expenses of its defense. They consulted lawyers who advised them that the title was still in the county. This necessarily involved the assertion that the Bryans had no title, a conclusion that was subsequently confirmed by this court in the former appeal. It was also held in the former appeal that Bedford, his grantor, stood in such a relation to the Chouteau suit that his title inured to Chouteau, and through Chouteau to Stoddard County, so that it was not available to invoke the Ringer equity under the compromise as applicant for a patent, so that McKinnies had no choice but to secure Dr. Davis as an instrument to obtain the county's paramount title for $1.25 per acre, while, according to his own admission appearing in the record, it was worth $10 per acre. This the evidence shows he did. He testifies that he asked no aid from Davis, but simply went to the county court, and, unaided, secured a patent for the land at that price, thus pulling Davis out of the Bryan case, pending in this court, by the roots. Davis not only disputes this, testifying in detail to his negotiations with McKinnies and his own assistance in securing the patent, but brings numer-

ous witnesses to corroborate his testimony.  He says that the interest that he claimed through the Ringer sale had already cost him about $900, and that he personally talked with Judge Harper of the county court about the issue of the patent to McKinnies.  He describes in detail the making of the contract in Dr. Hunt's office on February 7, 1908, by which McKinnies agreed to pay the county $1.25 per acre, taking the patent in his own name and making a conveyance of the land to him (Davis), reserving the timber and five years in which to remove it. Dr. Hunt testified that he was attorney for Davis and Gardner in the suit brought against them by the Bryans in 1906, and McKinnies told him that he was to pay the costs of the suit and to have the timber on the land. That he was present at the interview at his own office on February 7, 1908, and heard the conversation at that time in which McKinnies agreed to secure the patent and convey the land to Dr. Davis, reserving the timber with five years for its removal.  Gardner, who claimed under the Ringer title the southeast quarter of the same section, was present, and participated in the agreement, which also covered that quarter.  Mr. Horace M. Dunbar, who furnished $600 to McKinnies to buy both the Davis and Gardner timber, also participated in the agreement, to which Mr. Gardner also testified.  Dr. Hunt, Dr. Davis's attorney, was present in court at the time the patent to McKinnies was ordered and issued.  Judge Harper of the county court testified that he sat with the court when the patent was ordered.  That it was a rule that the land should not be sold to any one for $1.25 per acre excepting holders of the Phelan-Hicks title.  That he knew of the claim of Gardner and Davis through that title, and that McKinnies said that he was to have the timber on the land and five years in which to remove it.  The evidence was so direct and convincing in this respect that the respondent does not seem to question in his brief that the agreement was made by McKinnies, that it was necessary that he should have an interest through the

Phelan-Hicks title in order to obtain the patent and that the patents to the land in Section 10 were issued to him for the consideration of $1.25 per acre, because of his connection with the claims of Davis and Gardner respectively.

Instead of making a deed to Davis immediately upon receiving the patent, it took some importunity on the part of the latter to obtain the performance of that part of the agreement, but, on June 8, 1908, McKinnies, with his wife, executed a quitclaim deed conveying the land to Davis, reserving the timber thereon to be removed within five years, which was duly recorded on the 15th day of the month. During this interval and on April 23, 1908; Sibole obtained the judgment under which the respondent purchased on October 6, 1911, and claims title. The question which dominates this case is whether a trust resulted in favor of Davis from the facts we have stated. The theory of the respondent is, or seems to be, that to create a trust in such a case it is necessary that the party asserting it should have had an interest in the land or paid the purchase price therefor, and that in this case neither of those conditions existed. He assumes that one dollar and twenty-five cents per acre constituted the entire consideration for the purchase, and that Davis had no interest whatever which contributed to its acquisition. That while the evidence was to the effect that at the time of the issue of the county patent to McKinnies the land was worth very much more than the price then paid the county, and that the timber alone was sold by him to one Gant in the same transaction for several times that amount, yet the purchase price for the acquisition of the completed title must be measured by that sum alone. The fact is that a suit was then pending in this court upon the appeal of Davis, in which Bryan was asserting the title held invalid in this case. Upon the issue of this patent he suffered his appeal to be dismissed. He was satisfied with the paramount title received by the patent to Mc-

*Trust: Consideration.*

Kinnies, and believed that he could safely stand by that transaction, and did so.  He had expended, as he says, and it is not disputed, about $900 in the acquisition of the title under which he had previously claimed, and this was the real money consideration invested by him in the McKinnies patent.

IV.  The respondent, in his presentation of the case here, . wastes no time in denying the facts as we have stated them, but plants himself upon the theory that the law affords no remedy.  He says that the whole moral duty of McKinnies was defined by an oral contract, void by the terms of the

Oral Contract.

Statute of Frauds requiring it to be evidenced by writing.  He seeks to confine the interests of all the parties to the six hundred dollars which he paid the county for patents to four hundred and eighty acres of land claimed by Davis and Gardner, while it was worth, as he had stated in another suit, five thousand dollars.

The county court is far from being open to the imputation implied in this assertion, even had the Phelan-Hicks compromise exceeded the powers entrusted to it. The payment for the land by Ringer, though he acquired no title thereby, gave the county the moral right to return, in some form, the amount so received, and this respondent is not in position to question its right to do so by issuing a patent to a claimant under the Ringer purchase at one dollar and twenty-five cents per acre, although the land may have been worth eight times that amount.  The question of title was then a live one.  Bryan and Davis were then locked in a judical contest over it in this court, and Judge Harper of the Stoddard County Court that issued the patent testified in substance that one of the objects of the court was to have the title of the county judically determined. It is absurd to say that the interest of Davis was valueless, and constituted no part of the consideration, for the evidence shows that. it was that part which was the moving cause of the issue of the patent.  Its value was liquidated by

the parties themselves so as to represent the value of the land when denuded of the timber, which was the real subject of the transaction. To hold, as respondent contends, that our subsequent decision in this case eliminated the claim of Davis as an element of the consideration for the patent, would be equivalent to holding that a failure of title to. land acquired by quitclaim deed would authorize the recovery of the consideration.

V. Our Statute of Frauds (Sec. 2869, R. S. 1909) provides: "When any conveyance shall be made of any lands, tenements or hereditaments, by which a trust or confidence may arise or result by implication of law, such trust or confidence shall be of Trust: Undisclosed like force as the same would have Dower; Consideration. been if this act had not been made." This section defines trusts expressly excluded by its terms from the operation of the next preceding section (Sec. 2868) which provides that "all declarations or creations of trust or confidence of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party who is, or shall be, by law, enabled to declare such trusts." Section 2869 rocognizes that all trusts are not expressly declared or created by the donors, but that some trusts are created by law in the interest of equity and good conscience, which recognizes the true ownership of land beneath the formal deeds by which the law expresses it. It recognizes those interests which result from circumstances undisclosed in the muniments of title by giving effect to the true ownership of the consideration upon which the title rests regardless of the terms of the deed by which it is vested. In such cases the equitable ownership of the land follows the ownership of the consideration, and the grantee is held to be a trustee for that purpose. The extent to which this principle is applied in the creation of a resulting trust is shown in Condit v. Maxwell, 142 Mo. 266. In that case the land situated in Missouri was acquired in a trade and the consideration paid by the conveyance

of lands in Illinois, while the conveyance was made to one of the parties interested in the Illinois land. In that case we held that the title of the Missouri land was charged with a trust in favor of all persons interested at law or in equity in the Illinois land that constituted the consideration, and an accounting was taken to determine the extent of the interest of one of them under a contract by which he had been in possession of the Illinois lands with the right to make improvements at the expense of the owner.

Resulting trusts growing out of interest, either legal or equitable, in the consideration paid for the acquisition of the legal title, were not the only ones exempted from the operation of the Statute of Frauds by Section 2869. It applied to all conveyances made under such circumstances that a trust should arise with respect thereto. This includes constructive trusts, arising *ex maleficio,* enforced on the ground not only that they are expressly excepted out of the statute, but also that to apply the statute would make it an instrument of fraud. The rule has been frequently applied by this court where the owner of an interest in the equity of redemption employs an agent to purchase at the mortgage sale under an oral agreement that he shall have the benefit of the purchase. [Leahey v. Witte, 123 Mo. 207; Richardson v. Champion, 143 Mo. 538; Phillips v. Jackson, 240 Mo. 310, l. c. 335; State ex rel. Cruzen v. Ellison, 211 S. W. 880.] We have, as is shown in the foregoing cases as well as in many others they cite, always held that one purchasing for the owner of the equity of redemption under such circumstances acts in a fiduciary capacity, and with respect to property so acquired is charged as trustee for the one for whose benefit he has assumed and promised to act. The trust in such cases does not result from the payment by the beneficiary of the purchase money, but from the fact that its repudiation would be fraud which the statute is not designed to protect. To use the words of a distinguished author in de-

fining this distinction: "A constructive trust is one that arises when a person, clothed with some fiduciary character, by fraud or otherwise gains some advantage to himself. Courts construe this to be an advantage for the *cestui que trust* or a constructive trust." [1 Perry on Trusts (6 Ed.) sec. 27.]

Constructive trusts are barriers erected by equity against fraud, and are particularly designed to prevent the use of the Statute of Frauds as an instrument of fraud and oppression. This is usually attempted, as in this case, by procuring the title to property in the guise of friendship and good will under promise to use it in the performance of friendly offices and then interposing the Statute of Frauds to complete the title so acquired. Courts of equity do not permit this. They consider the transaction in its entirety. They do not consider the trust a matter lying in contract, but as arising from the nature and circumstances of the act by which the title is acquired.

The respondent contends that McKinnies, being the owner of the land through his county patent under an oral agreement to convey it (reserving the timber) to Dr. Davis, the duty to make the conveyance depended upon an oral contract made before the title was acquired and was therefore an express trust, and void under the Statute of Frauds. The same argument would apply with equal force to a case in which the agent should be given the money by his principal to purchase land and told to have the title taken to himself and to convey it to the principal on his return, and should promise to do so. The same formula in which we have stated our impression of respondent's argument would apply in case the agent should purchase the property and refuse to convey it to his principal. The principal might say: "The Statute of Frauds does not apply, because the fact that I furnished the money for the purchase of the property raised a resulting trust in me which the court will enforce." The agent might reply, like respondent:

"All that is true, but I promised to convey the land to you when I got back, which turned your resulting trust into an express trust." However illogical this reasoning may be, it correctly paraphrases our understanding of respondent's argument. Its unsoundness lies in the fact that the agreement of the agent to convey does not create the trust, but simply goes to the method by which it is to be executed. Upon the refusal to execute it the equity still remains. This case affords an excellent illustration of the principle. By agreement these parties pooled their interest in the title they were about to obtain from the county to this land. They liquidated these interests by agreement, so that the interest of one should be measured by the value of the timber, and that of the other by the value of the land without the timber; so that whoever should take the title to the land would take it subject to a constructive trust in favor of the other to that extent. They determined that McKinnies should receive the patent, and immediately upon its issue the trust arose in favor of Davis and remained impressed upon the land until fully executed four months later by conveyance to Davis of the interest he represented.

As we have already indicated this agreement is proven by evidence so direct and convincing as to remove every shadow of doubt. The respondent in his argument does not attempt to analyze it, or otherwise question its conclusiveness. That the division agreed upon was fair and equitable, and made upon a theory which orginated in the desire of McKinnies to procure the timber is equally evident and that he executed it as made by his deed after waiting until, by prompt action, the Sibole judgment against him could be procured, appears upon the face of the record. That an agreement existed between Sibole's attorney and McKinnies that the latter should be notified before steps should be taken to enforce the judgment, appears from the statement of both McKinnies and Burr in their petition in the

suit against Sibole we have already mentioned. All these things become suggestive in the light of the fact that Sibole waited until the lien of his judgment would expire in ten days before taking out execution, and the sale was made about three and one-half years after the issue of the county patent on February 8, 1908, when the timber, which was sold for double the amount of the judgment, had been removed. All these things, with others which appear in the record, are calculated to excite in an open and unbiased mind the suspicion that the Sibole judgment was used, if not obtained, for the purpose of extinguishing the interest of Davis while leaving the interest of McKinnies untouched. That respondent knew what was to be known with reference to the title of McKinnies is not denied. He was attorney for McKinnies in the matters connected with the sale of the timber out of which the money paid the county court was advanced, and during this entire litigation. The deed from his client to Davis stood upon the record as notice to all the world of the claim of Davis. It is therefore unnecessary to inquire whether the lien of the Sibole judgment of April 23, 1908, would sustain the title of an innocent purchaser at the sheriff's sale thereunder. Burr was not an innocent purchaser and took nothing as against the equity of Davis, which ripened into this deed, which therefore constitutes the better title.

The judgment of the Mississippi Circuit Court is accordingly reversed and the cause remanded to said court, with directions to enter in proper form its judgment declaring these appellants, Robertson and wife, to be the owners in fee by the entirety of the north half of Section 10, Township 28, of Range 11, and that this respondent has no right, title nor interest therein. *Ragland* and *Small, CC.,* concur.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of Court in Banc. All of the judges concur.