Robert W. LONG and David H. Long, Appellants,

v.

Frances E. KYTE, Respondent.

No. 47808.

Supreme Court of Missouri,

Division No. 2.

Dec. 12, 1960.

John C. Russell, Donald E. Raymond, Kansas City, for appellants.

James A. Moore, Laird P. Bowman, Kansas City (Gage, Hodges, Moore, Park & Kreamer, Kansas City, of counsel), for respondent.

STORCKMAN, Judge.

This action in equity was brought to establish a resulting trust in a 400-acre farm situated near Belton in Cass County. The trial court found the issues against the plaintiffs and decreed and adjudged the defendant to be both the legal and equitable owner of the land in question. The plaintiffs' chief contention on appeal is that the trial court erred in holding that the evidence was insufficient to establish that the defendant held title to the land as a trustee for the benefit of the plaintiffs.

The plaintiffs are sons and the only heirs of David E. Long who died intestate in Kansas City, Missouri, on October 12, 1955. Mr. Long was at one time a member of the County Court of Jackson County and was sometimes referred to in evidence as Judge Long which appellation will sometimes be used to distinguish him readily from his sons. The sons were jointly engaged in the insurance and real estate business in Kansas City and in the later years the father had his office with them. Judge Long's principal occupation was investing and trading in real estate. He was the beneficial owner of all of the capital stock of Farm City Investment Company which he utilized as a real estate holding company. Farm City was liquidated in 1951 or 1952 after the real estate held by it had been distributed to the sons or otherwise disposed of.

The legal title to the land in question, encumbered by a $30,000 deed of trust, was conveyed by W. G. Wrenn and his wife to Farm City Investment Company by a warranty deed dated July 25, 1930. The transfer was pursuant to a real estate exchange agreement. Farm City caused to be conveyed to Mr. Wrenn and his wife a business property located in Kansas City on the northwest corner of 15th and Charlotte Streets subject to a deed of trust securing a note payable to Farm City for $65,000 and interest. Legal title to the farm remained in Farm City from July 1930 until it was conveyed to George E. Mitchell, a business associate of Judge Long, by a quitclaim deed dated January 5, 1946, and recorded August 29, 1946. The defendant acquired the legal title to the farm by a warranty deed dated January 5, 1946, executed by Mr. Mitchell which was filed for record on February 23, 1955.

The plaintiffs concede that the record title to the farm was in the defendant's name at the time Judge Long died in October 1955 but assert that their father was the beneficial owner at the time of his death and that they as his heirs have succeeded to his title. The defendant, on the other hand, asserts that she was the equitable owner of the farm at all times and that the title was held for her by others until it was placed of record in her name on February 23, 1955, by virtue of the Mitchell deed dated January 5, 1946.

The record evidence in the case, including exhibits, is voluminous and need not be set out in great detail. On many of the facts the parties differ only as to their interpretation. Having traced the legal title, we now address ourselves to the evidence relating to the ownership of the beneficial interest in the land from July 1930 to the time of Judge Long's death in October 1955.

The son, Robert W. Long, knew about the purchase of the farm but neither he nor his brother had anything to do with the purchase or the handling of it. He had been to the farm on one occasion but no other member of the family other than his father had been there. Robert W. was the ad-

ministrator of his father's estate. Donald Patterson, the attorney handling the estate, knew about the farm and had talked to Judge Long about it, but the attorney did not list the farm in the inventory and appraisement of the estate nor in the Federal Estate Tax Return. Nor was the $50,000 note secured by a deed of trust on the farm listed in the inventory or in the tax return. David E. Long was about 84 years old at the time of his death. His wife died in 1950, and during the last two years of his life he lived at the defendant's home on Gillham Road in Kansas City. An officer of the First National Bank of Kansas City identified loan records of the bank which showed that Judge Long or his investment company borrowed $31,500 from the bank in December 1930 which was used to pay the indebtedness secured by a deed of trust on the farm. This witness testified that Judge Long told him that he had bought a farm and that this was the final payment on it. The first mortgage encumbrance on the farm, which the bank loan was used to pay, was pledged with other collateral as security for the bank loan which was later paid.

The farm was primarily a stock farm used to raise horses and cattle and in the early years turkeys; crops were grown mainly to feed the livestock on the farm. The evidence is quite conclusive that the defendant managed and operated the farm practically from the time it was purchased in July 1930. There were living quarters on the farm and she stayed there part of the time. New barns and other improvements were erected. She was in charge of operations and gave all instructions. Many of the lumber and material bills and some of the wages of workmen and farm hands were paid by checks signed by Judge Long, but the defendant generally approved the payments before they were made; sometimes the workmen and others were paid in cash by the defendant. The defendant and Judge Long frequently came to the farm together and were often there two or three times a week. Witnesses, including

Judge Long's attorney, testified that Judge Long advised the defendant, handled her business matters and acted as her unofficial guardian for many years. Richard O. Steele, the former nominal president of Farm City Investment Company, identified an account book in which he had entered at Judge Long's direction expense items in connection with the Belton farm through November 30, 1931. He was told by Judge Long at that time to discontinue keeping these records. On one of the pages, unsigned but in the handwriting of Judge Long, is this notation: "This property quit claimed for debt against it." On several occasions Judge Long claimed ownership of the farm in his income tax returns; but, as pointed out by the trial court in its opinion, the claim of ownership on such occasions was beneficial to him in that the farm deductions were substantially more than the income. Tax receipts in evidence for the years of 1938 through 1942 were issued in his name; other receipts in evidence for the years 1943 through 1946 are in the name of the defendant Frances E. Kyte.

A number of witnesses testified that the farm had been generally known in the community as the Kyte farm and that Judge Long had told them that he had no interest in the farm, that it belonged to the defendant and that he was managing her finances. Livestock auctions held at the farm were arranged and conducted by the defendant. A catalogue of one of these auctions and other papers show that the farm was publicly known as the "Kyte Pure Bred Stock Farm". There is evidence that the defendant collected stud fees and other income from the operation of the farm.

George E. Mitchell, a former business associate, testified that he took title to the farm from Farm City at the request of Judge Long and executed a note for $50,-000 payable to Mr. Long and secured by a deed of trust on the farm, but that Judge Long assured him that he would never be bothered about payment of the note. Judge Long told him that the defendant owned

the farm and that he, Mitchell, was holding it for her. While the title was in Mr. Mitchell's name, the defendant asked him to execute an easement to a gas company which he did. On the same day the farm was put in his name, Mr. Mitchell signed a general warranty deed conveying the land with the name of the grantee left blank. He was later informed that the deed was placed of record in the defendant's name.

W. R. Moore, an attorney in Kansas City since 1898, represented David E. Long on various occasions and prepared many of the deeds and documents introduced in evidence. He was acquainted with many of the transactions as attorney for Mr. Long and later representing the defendant as well. Mr. Moore testified that the note for $50,000 and deeds securing it executed by George E. Mitchell was a "blind mortgage" and that Mr. Mitchell received nothing out of the transaction except recited consideration of $1. Judge Long told his attorney that the farm belonged to the defendant. He delivered to Mr. Moore the warranty deed signed by Mr. Mitchell, the $50,000 note payable to David E. Long and the deed of trust securing it and a letter instructing the attorney to deliver the documents to the defendant upon Mr. Long's death for the purpose of vesting absolute title in the defendant. Subsequently, with the consent of the defendant, the warranty deed, note, and deed of trust were given to Judge Long and Mr. Moore next saw them at the defendant's house in the presence of the defendant and Judge Long. At that time the defendant's name was on the deed. The attorney was then instructed by Judge Long and the defendant to record the warranty deed and release the note and deed of trust which was done before Judge Long's death.

The evidence is quite conclusive that the defendant was in charge of and operating the farm for a period of approximately 25 years during the lifetime of Judge Long and that she received the rents and profits of the land with his approval. While the details of their financial arrangements are not fully developed, it is evident that one existed which was satisfactory to Judge Long. Some of the evidence will be more fully discussed in the course of the opinion.

■ The appellants state that "there is no dispute about the substantive law in this case" and concede that the "appellant has the burden of proof" and that burden "requires strong proof." Section 456.030, RSMo 1949, V.A.M.S., provides: "When any conveyance shall be made of any lands, tenements or hereditaments, by which a trust or confidence may arise or result by implication of law, such trust or confidence shall be of like force as the same would have been if the act had not been made." This section has the effect of excluding resulting trusts, among others, from the operation of § 456.010 which requires all declarations or creations of trusts in land to be evidenced by some writing signed by the party who has the capacity to create the trust. Bryan v. McCaskill, 284 Mo. 583, 225 S.W. 682, 687 [5]; Scholle v. Laumann, Mo.App., 139 S.W.2d 1067, 1070 [2]; Jankowski v. Delfert, 356 Mo. 184, 201 S.W.2d 331, 334 [3]. See also § 432.010.

■ Nevertheless, the evidence to establish a resulting trust in opposition to the record title must be so clear, cogent and convincing as to exclude from the mind of the court all reasonable doubt as to the existence of the trust. Ellis v. Williams, Mo., 312 S.W.2d 97, 102 [8]; Isenman v. Schwartz, Mo., 335 S.W.2d 112, 116 [6]; Decker v. Fittge, 365 Mo. 139, 276 S.W.2d 144, 147 [1].

■ "A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of." Restatement, Second, Trusts § 404, Vol. II, p. 326. Missouri decisions are in accord with this statement.

See Jankowski v. Delfert, 356 Mo. 184, 201 S.W.2d 331, 334 [2, 3], and Williams v. Ellis, Mo., 323 S.W.2d 238, 240 [2].

■ One of the general types of resulting trusts recognized and enforced in equity is where the legal title to real estate is transferred to one person but the purchase price is paid by another. Jankowski v. Delfert, 356 Mo. 184, 201 S.W.2d 331, 334 [1]; Restatement, Second, Trusts § 440, Vol. II, p. 393. The plaintiffs plead and strongly rely upon that sort of resulting trust. But a resulting trust does not arise in such circumstances if the person by whom the purchase price is paid manifests an intention that no resulting trust should arise. Restatement, Second, Trusts § 441, Vol. II, p. 396.

■ In an equity action we review the case both upon the law and the evidence and determine the credibility, weight and value of the oral testimony and other evidence in the case, but in doing so we give due deference to the trial chancellor's findings as evidenced by its decree and do not set aside the judgment unless it is clearly erroneous. Mueller v. Mueller, Mo., 318 S.W.2d 365, 368 [1]; Nixon v. Franklin, Mo., 289 S.W.2d 82, 88 [5]; Herrold v. Hart, Mo., 290 S.W.2d 49, 55 [5]; § 510.310 subd. 4.

The plaintiffs contend that the evidence was sufficient to prove "that the only consideration for the premises was paid by David E. Long and that legal title was held for his benefit and that of his heirs." The evidence tends to prove that the farm land was transferred to Farm City Investment Company in exchange for a business property which was later regained by Farm City on foreclosure; that in December 1930 the notes secured by a deed of trust on the farm were paid from funds borrowed by Farm City from the First National Bank and that this bank loan was repaid on September 26, 1932. On plaintiffs' theory the purchase price of the farm was completely paid in 1932. The title was then in Judge Long's holding company and so remained until 1946 when it was transferred · to George E. Mitchell and thereafter to the defendant. Thus on plaintiffs' theory, there was no separation of the legal and beneficial estates prior to 1946.

■ A resulting trust is one implied by law from the acts and conducts of the parties and the facts and circumstances which exist at the time and attend the transaction out of which the trust arises. Ellis v. Williams, Mo., 312 S.W.2d 97, 101 [3]. The first transaction on which the plaintiffs could predicate the creation of a resulting trust in favor of Judge Long would be the conveyance from Farm City to George E. Mitchell or from him to the defendant; but the payment of the purchase price did not *at that time exist and attend the transaction* out of which the alleged resulting trust must have arisen. The payment of the purchase price almost fourteen years before could hardly be said to be a circumstance attending the disposition of the property in 1946 and thereby furnish a basis for the inference on which the plaintiffs rely. But since that theory was not presented to the trial court and is not urged upon us now, we will consider the evidence as to the payment of the purchase price along with the other evidence in the case in order to determine if the circumstances raise an inference that Judge Long did not intend for the defendant to have the beneficial interest in the farm.

The defendant was incompetent as a witness under the Dead Man's Statute, § 491.-010, but her version of the payment of the purchase price and her interest in the property was contained in an affidavit, Plaintiffs' Exhibit 41, executed by the defendant in January 1956 when she negotiated a loan on the property. The affidavit was endorsed as being true by W. R. Moore, attorney for Judge Long, Richard O. Steele, formerly the president of Farm City Investment Company, and George E. Mitchell who held the legal title for a time on transfer from Farm City. In general, the defendant's statement was that she purchased the land in the summer of 1930 with moneys which she had inherited from her parents and grandpar-

ents and that she had paid the first and second mortgage liens on the premises with earnings from the land, that she had caused the land to be held in the name of Farm City and Mr. Mitchell for her benefit because of outstanding judgments against her, but that she had been in actual possession of the land since 1930 and exercising all rights of ownership, including the paying of taxes.

While the plaintiffs placed this affidavit in evidence as part of their case, they attack especially the statement that the defendant paid the purchase price of the land and the encumbrances on it and assert that this claim is demonstrated to be false in that the documentary evidence shows that the property was acquired by Farm City in a real estate exchange and that David E. Long paid the first and second mortgage encumbrances on the property, as well as some of the taxes and expenses of operating the farm. They say that while the defendant was generally disqualified under the Dead Man's Statute she could and should have taken the stand to testify as to the amount of her inheritance, from whom she inherited it and, since she did not do so, the affidavit is shown to be false and that all of her evidence is "belied by her false and fraudulent affidavit setting up a fictitious claim to the property." We cannot agree with the plaintiffs' conclusion.

It may well be, as the defendant suggests, that the language used in the affidavit is an oversimplification of the manner in which the purchase price of the farm was paid, but it is not necessarily inconsistent with a conclusion that in the final analysis funds of the defendant were used to discharge the encumbrances on the property and to repay Mr. Long or Farm City the amount of any loss to the 15th and Charlotte property which was used in the trade, but regained by Farm City on foreclosure. There was testimony that the defendant had received money by inheritance and that Judge Long was managing her finances. Attorney Moore testified that both Mr. Long

and the defendant had told him so and this was the basis for his endorsement of the statement in the affidavit. Also there was other substantial evidence, oral and otherwise, that the defendant was possessed of financial resources, although the amount and origin are not shown, and that Judge Long was in charge of and managing her finances. In fact, plaintiffs' own evidence, Exhibit 10, tends to support this view. This exhibit was identified as the liability ledger of David E. Long at the First National Bank showing loans made, usually in the name of Farm City, at the bank and the collateral pledged. The two sheets of the exhibit cover a period from December 15, 1930, through March 4, 1935. Among the collateral kept posted by Mr. Long during this period is a first mortgage note of Frances E. Kyte on which the balance due is stated to be $13,400. There was no attempt to explain this entry or describe it further. Nevertheless, it reveals that Judge Long was possessed of Miss Kyte's first mortgage note for $13,400 which he was using as collateral for a loan from the bank to Farm City Investment Company. The capacity to issue a first mortgage note is some evidence of financial means and the possession of the note by Mr. Long tends to show financial dealings between him and the defendant.

We are not persuaded that the affidavit has been demonstrated to be false in legal effect or that we should draw an unfavorable conclusion from defendant's failure to offer herself as a witness on the source and amount of her inheritance. It is not clear that the defendant would have been a competent witness on this score under § 491.010 since her testimony would have to trace her funds to Judge Long in order to be relevant, and that would clearly violate the statute. If the defendant was incompetent under the statute, then no unfavorable inference could be indulged by reason of her failure to testify. Allen West Commission Co. v. Richter, 286 Mo. 691, 228 S.W. 827, 832 [7].

■ The overwhelming weight of the evidence supports the view that David E. Long intended for the defendant to have both the legal and equitable title in the land; but, if there were any doubt, it would be removed by the letter of instructions which he executed and delivered to his attorney, W. R. Moore, under date of March 24, 1948. This letter recites that Mr. Long is delivering to Mr. Moore the Mitchell deed and the promissory note for $50,000, payable to David E. Long and secured by a deed of trust on the farm land which note was endorsed without recourse. After directing Mr. Moore to deliver these papers to Frances E. Kyte upon Mr. Long's death, the letter then made this declaration: "It is intended that the enclosed papers shall vest *absolute title* in said Frances E. Kyte, and delivery of same to you is irrevocable." Italics supplied. The documents were later redelivered to Judge Long after the attorney obtained the approval of the defendant, but there is no showing that there was any change in Mr. Long's intent and purpose to vest Frances E. Kyte with absolute title to the land as expressed in his letter. The evidence is that he accelerated the vesting. The testimony of Mr. Moore is that both the defendant and David E. Long instructed him to record the deed; thereby the defendant was vested with "absolute title" as expressed in the letter of March 24, 1948.

■ An *absolute* title estate or property is a fee simple estate; it is an estate without end or limitations and the largest estate a person can possibly have. Middleton v. Dudding, Mo., 183 S.W. 443, 444 [5]; Wyatt v. Bauer, Mo.App., 332 S.W.2d 301, 304 [3]. In the Middleton case this court stated, 183 S.W. 444: "An 'absolute estate' is a fee simple; for if it were anything less, it could not be 'absolute' for that term is thus defined: 'Free from limit, restriction, or qualification.' And among these illustrations of its meaning are the following: 'Absolute ownership; absolute gift.' Webster's New International Dictionary."

■ This statement from 89 C.J.S. Trusts § 105, p. 956, has been approved in Parker v. Blakeley, 338 Mo. 1189, 93 S.W.2d 981, 988 [10]: " * * * the general rule is that: In the absence of fraud or mistake, a resulting trust will not arise in favor of the grantor although a valuable consideration is not in fact paid, where a declaration to the contrary is made by the grantor at the time of the conveyance, as where the conveyance recites a valuable consideration as paid by the grantee, even though it be only nominal, particularly where the conveyance is absolute in form and the habendum clause declares the beneficial use or interest in the property to be in the grantee or some third person."

■ The plaintiffs also assert that the conveyances from Farm City to Mr. Mitchell and from him to the defendant did not affect the equitable ownership of the premises because they were gratuitous and seek to invoke the rule that where trust property is conveyed without consideration, the transferee holds the property subject to the trust. Before this rule and its application become important, the plaintiffs must discharge their burden of establishing that David E. Long intended to and did create a trust for his own benefit. This they have failed to do and the trial court correctly ruled in so holding. Equity will not create or enforce a resulting trust contrary to the ascertained intention of the parties. Jacks v. Link, 291 Mo. 282, 236 S.W. 10, 15 [7].

The judgment is affirmed.

All concur.