## ORA WRIGHTSMAN v. JOHN C. ROGERS et al., Appellants.

### Division Two, February 6, 1912.

1. **RESULTING TRUST: Funds Furnished by or for One, Title Taken by Another: Accounting: Costs.** Defendant was curator for plaintiff. Money advanced for the plaintiff by the bank of which defendant was cashier, or drawn from plaintiff's funds in his hands, was used by the plaintiff's mother in buying and improving real estate to which the mother took title in her own name. Defendant lent the mother $1350 on the property and finally bought it in at an execution sale. Plaintiff sues to establish a trust in the said property in defendant's hands. *Held,* that, under the evidence as set out in the opinion, the undertaking was joint between the mother and daughter and the property is impressed with a resulting trust in plaintiff's favor, subject to be reduced by plaintiff's proportionate share of the $1350 debt, after the mother's (the principal debtor's) interest has been exhausted. For full and complete relief the property should be sold and there should be an accounting with defendant, in the manner set out in the opinion. The costs after remanding should be paid out of the fund in accounting.

2. ————: ————: **Time of Payment: Obligation to Pay: Evidence of.** It is not necessary to the establishment of a resulting trust that the money be paid by the *cestui que trust* at the time when the trustee takes title. It is sufficient if the person supplying the money intended it as a gift or loan to the *cestui que trust.* It is sufficient that an obligation to pay is incurred by him, as a part of the original transaction of purchase, at or before the time of the purchase. This obligation to pay the money need not be evidenced by a note or other writing.

3. ————: ————: **Interest of Cestuis.** Where the consideration proceeds from two or more, and the title is taken in one, a resulting trust arises in favor of the party not named in the conveyance in proportion to the relative amount of the consideration paid by each.

Appeal from Christian Circuit Court.—*Hon. Argus Cox,* Judge.

Reversed and remanded (*with directions*).

*G. A. Watson* for appellants.

(1)   The evidence shows conclusively that no part of respondent's money was used in the purchase of the lot on which the hotel was afterward erected and no trust could arise by operation of law in favor of respondent. Kelly v. Johnson, 28 Mo. 249; Sell v. West, 125 Mo. 631; Weiss v. Heitkamp, 127 Mo. 31; Richardson v. Champion, 145 Mo. 544.   (2)   Before a trust can result or arise by implication of law in real estate the relation of trustee and *cestui que trust* must result from the facts which occur at the time of or prior to the purchase and can not be created by subsequent occurrences.   Kelly v. Johnson, 28 Mo. 249; Weiss v. Heitkamp, 127 Mo. 31; Richardson v. Champion, 143 Mo. 544.   (3)   The evidence all showed conclusively that the property was bought by Mrs. Wrightsman; title taken in her name; paid for by Maude Wrightsman and no money of respondent used in the purchase nor on the building for months afterward.   No trust could arise or result under these facts. Kelly v. Johnson, 28 Mo. 249; Weiss v. Heitkamp, 127 Mo. 23; Richardson v. Champion, 143 Mo. 538; Garrett v. Garrett, 171 Mo. 155.   If, as the evidence of respondent tended strongly to prove, the consent of respondent to have her money used in the erection of the hotel after she became *sui juris,* by the promise of her mother that she would subsequently deed to her a fourth interest in the property, this would create an express trust, at most, and resting entirely in parol, would be within the Statute of Frauds; not enforcible; not creating an interest in the property and not binding on subsequent purchasers with notice. Weiss v. Heitkamp, 127 Mo. 32; Hillman v. Allen, 145 Mo. 638; Mulock v. Mulock, 156 Mo. 431; Hail v. Heil, 184 Mo. 665; R. S. 1889, sec. 5184; R. S. 1899, sec. 3416. The evidence to establish a resulting trust must be so clear, cogent and convincing as to leave no reason-

able doubt in the mind of the chancellor. Such evidence is not in this record. Curd v. Brown, 148 Mo. 92; Mulock v. Mulock, 156 Mo. 431; Brinkman v. Sunken, 174 Mo. 709; McMurray v. McMurray, 180 Mo. 533; Reed v. Spery, 193 Mo. 167.

*J. P. McCammon* for respondent.

(1) The authorities cited by appellants have no application here because the lot was paid for by all. The evidence showed that plaintiff's money with that of her mother and sisters was kept by defendant Rogers in one fund—under his charge and control—known and carried on the books of the bank of which defendant was cashier as "The Wrightsman Fund" and that the payment for the lot was made out of this fund in pursuance to and execution of a previous agreement and plan to buy a lot and build a hotel. While in general a trust does not arise unless the purchase price is paid before the conveyance, yet where a fund is created or set apart for the purchase and improvement of real estate, in the hands and control of one person, who takes title to the land in the name of a third person and makes and pays for the improvements, the entire transaction relates back to the original raising and payment of the fund, and the holder of the title is a trustee for each contributor to the fund. Pearce v. Dyess, 101 S. W. 551; Baumgartner v. Guessfeld, 38 Mo. 36; Bradley v. Insurance Co., 90 Mo. App. 369; Lumber Co. v. Harris, 110 S. W. 609. None of the cases cited by appellant apply to the case at bar because of the difference in the facts. In this case the trust is acknowledged by every one connected with the transaction except the guardian whose business it was to protect the interest of his infant wards. He held the money in one fund—that of plaintiff, her sisters and her mother and, as the court found the fact to be, agreed with them to buy the lot and build the

hotel. He was depended upon by all the others to
have the deed drawn so that each would have a one-
fourth interest in the property. (2) The title to the
property was held in trust for respondent. Where
money of a minor is invested by the guardian in real
estate without the order of the proper court, and
where the guardian acts in good faith to protect the
interest of the ward, and the title is taken in the name
of the guardian's mother, the grandmother of the in-
fant, it was held that the ward is presumed not to have
known or consented to the transaction and the title to
the premises is held in trust for such minor. Mana-
han v. Holmes, 110 N. Y. S. 300. The guardian in-
vests the money of his ward in the building of a ho-
tel. He does it without authority of law—but the
ward on arriving at her majority gives the guardian
a receipt for the amount so invested—thinking she
has an interest in the property. That the guardian
can then defeat her right to a resulting trust is too
revolting to the moral sense to be upheld in equity.
Thompson v. Hartline, 16 So. 711.

ROY, C.—This suit was brought in the circuit
court of Christian county, to declare a trust in real
estate. A decree was rendered for plaintiff on De-
cember 18, 1906, and the defendant has appealed.

On March 23, 1895, the defendant John C. Rogers
was appointed curator of Maude, Ora and Jessie
Wrightsman by the probate court of Christian county.
He received at that time about $2700 belonging to his
three wards equally. He was then and continued to be
cashier of the Christian County Bank. The funds be-
longing to the three wards and such money as their
mother had at times were all kept together in one ac-
count at the bank as one fund, known on the bank
books as the "Wrightsman Fund." And when loans
were made of any part of the fund the notes were, for
convenience, made payable to a Mr. Taylor.

The children were all living with their mother, Mrs. B. A. Wrightsman, a widow, a hotel-keeper, who was desirous of building a hotel in the town of Ozark.

The plaintiff contends that it was agreed between the mother and the three daughters and the defendant, Rogers, that the mother and children should all put their money in a lot and the building to be erected thereon, and each was to have an interest therein.

The mother testified: ''Maude and I and Mr. Rogers talked it over that way and we intended to make the deed to them all, and Ora and Jessie consented to let their money go in the house, they each to own an interest in the home. I did not have a home nor any of them. I was turned out of a hotel and we concluded to get a home, and I did it all through Mr. Rogers.''

Maude testified:

''Q. I will ask you to state the circumstances connected with the buying of the lot on which the hotel was built, and the building of the hotel, and what agreement was made, if any. A. Well, it was agreed that we all had an equal interest in it, and when the lot was bought I signed the check that was paid to Mr. Woody for the lot.

''Q. How much was that? A. Eight hundred dollars, and we supposed that we all had a one-fourth interest in the hotel; that is the way it was supposed to be.

''Q. I will ask you if you heard the matter talked with Mr. Rogers? A. Well, we were to have a deed made to the house, mama and myself, and Ora and Jessie; they were under age.

''Q. Your understanding was that you should each hold a one-fourth interest, and your mother would have charge; you were of age at the time the lot was purchased? A. I think I was, yes, sir.

''Q. How did it come that the deed was taken in the name of Mrs. Wrightsman? A. I don't know

"Q. Who drew up the deed, do you know? A. I do not; Mr. Rogers went to have it made up.

"Q. You were looking to him? A. Yes, sir.

"Q. He would fix yours? A. Well, we all talked together; we all made it home."

Ora testified:

"Q. I will ask you to state the facts concerning the purchase of this lot, as it was talked about before the lot was purchased and the hotel was built, between you and your sister and Mrs. Wrightsman. A. It was talked about, but I was too small to realize how it was, but I know they bought the lot and it was to go to us children.

"Q. Now, you say that it was talked about in the family there? A. Yes, sir; I can remember of hearing them talk about it, but I don't remember what was said.

"Q. It was talked to Mr. Rogers in your presence? A. Yes, sir; I can remember that they talked about buying the lot."

Jessie testified:

"Q. State what the agreement was between you and your sister and Mrs. Wrightsman at the time of the purchase of this lot as to its ownership and the hotel that was afterwards built on it. A. Well, it was all left with my mother and Mr. Rogers. I took it for granted that I was to have an interest in the property, a fourth interest. It was talked of there, I never thought of lending my money to mother or letting her put it in there and taking a mortgage on it or anything of that kind."

The defendant testified: "I had nothing to do with the purchase of the lot. I did not invest any of plaintiff's money in the lot. It was paid out of that fund. I had nothing to do with the money only to pay it off."

By the Court. "Q. At the time you were making these payments to the contractors, did you understand,

or not, at that time that Mrs. Wrightsman's three girls, Maude, Ora. and Jessie, had it understood between themselves that this house should be built and they should own it together? What do you know about that? A. I don't suppose they did; Maude was of age at the time they bought that property; she paid for the lot.

"Q. Did you know the deed was made to her mother? A. No, sir, I didn't; well, I know Mrs. Wrightsman bought the property; I didn't see the deed."

By Mr. McCammon: "Q. You say that you don't know that these girls had an understanding that they would own the property? A. No, sir, I didn't.

"Q. When did you first learn that? A. Only in a way that it is sometimes talked; I have heard more since the suit begun than before.

"Q. Hadn't you heard them talk it before? A. No, sir, I never did; I talked to Mrs. Wrightsman, and she said those children, I have taken care of them and fed them and clothed them and schooled them, and two of them got married, and she paid out four or five hundred dollars.

"Q. That was from Mrs. Wrightsman herself? A. Yes, sir, and as far as my being requested to write a deed, I never heard anything about that. She kept the children and they were sent to school and she took care of them.

"Q. She sent them to school after the hotel was built? A. I don't know; I took two to Springfield myself and put them in school and paid for some books for them; I don't know whether they remember the circumstance, but I know I went with them and attended to it; I don't remember what year, and I took the two little girls up there, and put them in school."

By the Court: Q. You did understand that the money was being put in the building? A. Yes, sir; I understood their mother was getting their money,

and we paid for that building and other debts; they told me what they had was mama's, and they turned that money over and it was hers.''

Defendant also testified: ''It was my understanding that they had loaned their money to their mother.''

A deposition of defendant was used in evidence in which the following occurred: ''But you heard her discuss the question of investing the money of the other girls in property and you advised her not to do so but to loan the money? A. I can answer that in this way: Mrs. Wrightsman often came to the bank and consulted with myself and Mr. Taylor about her business affairs. She told me she was going to buy a lot and build a hotel. She wanted to know where a good lot could be bought, and I told her she had better wait and go slow. I heard her discuss the question of building a hotel with hers and the money that was in the family with Mr. Taylor.''

Maude became of age in November, 1895, but no final settlement of her estate was made until February, 1898. She then gave her curator a receipt for the amount due her, $899.33, but it was not paid to her. It remained in the ''Wrightsman Fund'' as before.

Sometime in February, 1898, the lot was bought on which to build the hotel. Maude drew a check on the ''Wrightsman Fund'' for $800 to pay for the lot, and the title was made to Mrs. Wrightsman.

Ora became of age April 20, 1898, and receipted on final settlement on May 14, 1898, for $902.18, none of which was paid to her, but it remained in the ''fund.''

Jessie became of age in 1900, and the final settlement of her estate on February 13, 1900, showed due her $1000.20, none of which was paid to her at the time of the final settlement nor afterward, except as will appear in other portions of this statement.

The defendant testified that the mother had some money in the fund, and she says the amount she had

in it was $500, but that she did not know whether
she put it in the house or not. She further testified
that the total cost of the house and lot was $4057.
When the building of the hotel was begun, most of
the fund was loaned out, and payments on account
of the building were made by the bank, relying on
being repaid out of the fund when the notes thereof
should be paid. The building was completed in Au-
gust, 1898, and on the twenty-seventh of that month
Mrs. Wrightsman gave the bank a note for $1650 at
8 per cent to cover those payments by the bank. There
was no security on this note, except the bank relied
on being repaid out of the fund as the money came in.
On January 24, 1900, Mrs. Wrightsman gave defend-
ant a deed of trust on the property to secure a note
for $1350 at 8 per cent, in which James F. Adams is
trustee.

Speaking of those two notes, the defendant testi-
fied: "You see this $1650 note was paid out of these
children's money, out of the children's fund, and this
money she borrowed from me time and again, and
there was a $500 deed of trust that she gave C. J.
Stewart and never paid and that was afterward in-
cluded in that $1350, and other bills that she had bor-
rowed to make $1350, and this $1650 note she borrowed
from the bank."

Defendant further testified:

"Q. Has that $1300 note ever been paid to you
at all? A. No, sir, that note is still due me, and I
told her if she would pay me I would deed the prop-
erty to her.

"Q. On the payment of the $1300? A. No, sir;
on the payment of what they owe me. In '94 she came
down from St. Louis, and still owes me that money.
I bought this property in at the sale; it was sold at the
courthouse door, and they owed me that.

"Q. Your judgment was prior to the mortgage?
A. I think so; I didn't want somebody else to come

in and buy it under the sheriff's sale, and if they pay me what they owe me I am willing to deed it to them.

"Q. How much do you claim that they owe you? A. About $3000. I think I have a $1350 note made January 24, 1900, and then I took up the Stewart note. When I took it up it amounted to $688, and about August 25, 1903, sometime along about that time, she made a new note to secure me in the matter. I have a memorandum of it here, the first note she gave me, the $1350, up to the time I was trying to settle with her, about the time she went to St. Louis. That note amounted to $1900, and the other amounted to $778; that is the Stewart note.

"Q. In 1903? A. Yes, sir; sometime in 1903 that amounted to $1890.

"Q. Are there any other amounts due you besides that? A. Yes, sir; the one that was given 1903, August 25; the amount due is $778; it had increased.

"Q. I thought you said it was $688, given in place of the Stewart note? A. It was.

"Q. And the interest and all amounted to $778? A. Yes, sir; I have a $355 note.

"Q. What note is that? A. Here it is here, April 9, 1904, and the Fisher debt was $514.

"Q. Who was that to? A. That was the debt it sold out under.

"Q. How much was it? A. Five hundred and fourteen dollars.

"Q. What did you pay for it? A. Five hundred and fourteen dollars.

"Q. That was the debt against Maude Fisher and Mrs. Wrightsman? A. Yes, sir."

On August 25, 1903, Mrs. Wrightsman executed a deed of trust to James F. Adams as trustee to secure defendant in the payment of a note for $688 at 8 per cent. On May 2, 1904, the property was sold under execution on judgment against Maude and the

mother, and in favor of a jewelry firm, and defendant became the purchaser for $514.

Adams is made a defendant, but made default, and has no interest in the suit, and wherever the word "defendant" occurs it has reference to the defendant Rogers.

We encounter no difficulty in reaching the conclusion that it was agreed between the mother and three daughters prior to the purchase of the lot, that they would buy the lot and build the hotel as a joint enterprise, and that the "Wrightsman Fund" should be used for that purpose. Neither is there any doubt that the defendant so understood the matter from the beginning. True that in one place he said that he thought the children were lending their money to their mother. But on the other hand he testified that she often consulted him and Mr. Taylor about her business and that she wanted to know where a good lot could be bought, and that he heard her discuss the subject of building a hotel with her money and the money that was in the family. The defendant did not proceed on the theory that the money of the children was being loaned to the mother. He had been their curator, was still the curator of two of them when the building was begun, and continued to be such curator of one of them until in February, 1900. He did not take any security or even a note from the mother for his wards' money, as he should have done if it was a loan by the children to the mother. On January 24, 1900, he took a note and deed of trust on the property to secure $1350 that he had furnished the mother for the building, and afterward, in February, took Jessie's receipt in full for $100.20 and paid her no money and did not get any note or security from the mother for Jessie's benefit. All of which conduct was perfectly consistent with honesty

on the theory that the girls were interested in the property and had invested their money in it, but inconsistent with the theory of a loan made to the mother.

It is conceded that a resulting trust must arise on the facts existing at the time of the acquisition of the title by the trustee. But it is not necessary that the money should be paid by the *cestui que trust* at that time. It is sufficient if the person supplying the money intended it as a gift or loan to the *cestui que trust*. [Kelly v. Johnson, 28 Mo. 249.]

It is sufficient that an obligation to pay is incurred by him, as a part of the original transaction of purchase, at or before the time of the purchase. [Weiss v. Heitkamp, 127 Mo. l. c. 31.]

This obligation to pay the money need not be evidenced by a note or other writing. [Clowser v. Noland, 133 Mo. 221.]

Where the consideration proceeds from two or more, and the title is taken in one, a resulting trust arises in favor of the parties not named in the conveyance in proportion to the relative amount of the consideration paid by each. [Baumgartner v. Guessfeld, 38 Mo. l. c. 41.]

When the agreement was made between the mother and her daughters to buy the lot and build the house, that agreement characterized every act done in its execution, and the payment for the lot was a payment by all in proportion to the amount furnished by each towards the completed enterprise.

We find that in the purchase of the lot and building the hotel thereon, Maude, Ora and Jessie Wrightsman each paid nine hundred dollars, or twenty-seven hundred dollars altogether, while Mrs. B. A. Wrightsman paid thirteen hundred and fifty dollars, making a total of four thousand and fifty dollars. And that the mother was at that time entitled

to three-ninths and each of her said three daughters was entitled to two-ninths of the property.

The plaintiff, seeking equity, must meet the defendant on equitable terms. From the facts in evidence, the loan made by defendant to Mrs. Wrightsman for $1350 secured by deed of trust on the property was made to Mrs. Wrightsman for the purpose of finishing the hotel. Without it, the building would have remained unfinished, and perhaps unhabitable; and the plaintiff's investment would have been a great loss. The defendant would not have made that loan on the security of Mrs. Wrightsman's interest alone. The interests of the three daughters should be regarded as covered by that deed of trust. But as to that deed of trust the interest of Mrs. Wrightsman was primarily liable as the property of the principal debtor, while the interests of the daughters were only secondarily liable as surety. The defendant took the deed of trust with a knowledge of all the facts necessary to constitute such relation. In order that there may be full and complete relief, the property should be sold, an accounting should be had with the defendant in which he should be charged with the net amount of rents and profits received by him for the property after allowing him credit for all taxes, insurance and repairs, and other legitimate charges. Said net amount of rents should then be added to the proceeds of the sale of the property. The costs of the proceeding from the time the cause is remanded to the trial court should be paid out of the fund. Then the three-ninths of that fund representing the interest formerly owned by Mrs. B. A. Wrightsman should be applied to the payment of the $1350 deed of trust and interest. If that three-ninths is insufficient to pay the deed of trust, then the balance remaining due on said deed of trust shall be paid in equal parts out of the interests of Ora and Jessie Wrightsman and the interests formerly owned by Maude Wrightsman now held by the defend-

ant. The remainder of the fund shall be distributed among the parties in proportion to their respective interests as above determined.

The judgment is reversed and the cause remanded, with directions to proceed in accordance with this opinion. *Bond, C.* (sitting in Division Two when this case was argued), concurs.

PER CURIAM.—The foregoing opinion of ROY, C., is adopted as the opinion of the court. All the judges concur.