VINCENT JANKOWSKI v. SOPHIE DELFERT, Appellant.—No. 39934.—201 S. W. (2d) 331.

Division One, March 10, 1947.

Rehearing Denied, April 21, 1947.

*Harry Gershenson* for appellant.

186

*Lawrence J. McKim* and *Wilton D. Chapman* for respondent.

BRADLEY, C.—Action to declare that the title of defendant (appellant) to lot 15, and part of lot 14, O'Fallon Park Subdivision, St. Louis, is held by her as trustee in a resulting trust for the benefit of plaintiff (respondent). In a second count plaintiff asked for an accounting as to $4,000 defendant borrowed and secured by deed of trust on the property. Defendant claimed that she and plaintiff were

to be married and that the money with which she bought the property was a gift to her by plaintiff.

The trial court, in an interlocutory decree, found that defendant held title as trustee of a constructive trust (used sometimes interchangeably for resulting trust, 65 C. J., p. 226) for the benefit of plaintiff, and directed that defendant make an accounting as to the $4,000 loan she placed on the property, as to rents she collected, and expenses she incurred. Defendant made the accounting which showed that the deed of trust to secure the $4,000 loan was released. And the accounting showed $1900 rents collected for 19 months, and expenses incurred, $1,015.67. The final decree divested title of defendant and vested the title in plaintiff; gave judgment in favor of plaintiff for $984.33 (should be $884.33) excess of rents collected over expenses incurred. Defendant appealed.

Defendant says that plaintiff's petition does not state facts sufficient for relief on the ground of a resulting trust. Both plaintiff and defendant are Poles and speak the Polish language, but plaintiff can neither read nor write any language. He speaks some English, but his ability to understand and answer questions in English was such that a Polish interpreter was called at intervals.

The property in question is referred to in the record as the Fair Avenue property. In 1942, plaintiff owned a house at 1950 Dodier Street, St. Louis, where he resided with his wife and 5 of his 7 children. His wife died July 15, 1943, and several months thereafter Antonshek Terry, an acquaintance of plaintiff and defendant's neighbor, took him to the home of defendant, a widow, who resided in her own home. Plaintiff said both Antonshek and defendant told him that defendant had told Antonshek to bring plaintiff to defendant's home. After the introduction plaintiff made frequent visits to defendant's home and quite a friendly relation, at least on plaintiff's part, developed. Finally defendant asked plaintiff to sell his Dodier Street home and buy something else; that she would find a place for him to buy. In May, 1944, he sold his home for $9200, but owed $500 thereon. After paying the $500 and other bills, he deposited (May 24, 1944) the remainder of the proceeds of the sale ($7,956.83) in the Northwestern National Bank, St. Louis. Defendant found the Fair Avenue property, the property involved here. Plaintiff met a real estate agent at defendant's home; thereafter looked at the Fair Avenue property, two or three times, once with defendant, and maybe twice, and on June 2, 1944, according to the bank record, plaintiff drew $150 from his account which he says was paid on the purchase price. Plaintiff said he gave the $150 to the real estate agent, and that he told the agent that he, plaintiff, would buy the property. July 11, 1944, plaintiff drew $6,850 from his deposit in Northwestern National Bank. He said that defendant sent her son in law (her son) with him when he drew the $6,850. After drawing the $6,850, plaintiff and the son

returned to defendant's home and plaintiff delivered the money to defendant, and he says that defendant thereupon said, "I pay for ―for your property." Soon after the $6,850 was delivered to defendant, she, her son, and plaintiff went to the real estate office that was handling the matter and the purchase of the Fair Avenue property was completed. The purchase price was $9,500, and this amount was handled by paying the $6,850 cash; the $150 deposited on the purchase price was applied, and a $2,500 deed of trust was given on the property, but the deed was made to defendant. Plaintiff testified that at the real estate office, when the deal was closed, he ascertained that the deed was to defendant (but this was after the deed was executed), and that he objected; that defendant told him that he should do nothing about the matter there, but to remain quiet and that she would transfer the title to him the next week. He says the real estate agent said that it would cost only $1.50 to return the property to him. The real estate agent testified that he "made" the deed, but does not say *when*. He said that plaintiff, defendant and her son, were at his office when the deal was closed, but does not mention the grantor or grantors, as the case may be. The deed is not in the record. The inference is that the grantor or grantors were not present, and if such is the case, then the deed was "made" before the deal was closed at the real estate office. The $4,000 deed of trust that defendant later placed on the property was, it seems, arranged for at this real estate office, and the real estate agent who "made the deed to defendant at first said that he thought plaintiff came to the office with defendant in connection with the deed of trust; then he said it "was another man, a heavy set man."

On cross-examination plaintiff said he never saw the deed at the real estate office, and he perhaps did not. The real estate agent who "made" the deed said plaintiff did not see it, and he said that he read the deed to defendant, but not in the presence of plaintiff. Plaintiff said that he first saw the deed two days later at defendant's home; that she told him his name was in it; that he could not read English or Polish; that she told him that for $1.50 she could transfer the deed into his name. Plaintiff said that after the deal was closed he saw defendant about returning the property to him the next week and the week following and for six weeks, and that she kept putting him off; that she never returned the property to him and did not return any of the $7,000; that he owed defendant no money.

Asked on cross-examination about the subject of marriage plaintiff testified that he visited defendant at her home once and sometimes twice a week; that he came because she asked him to; that he did not have business there, but just went to see her in the evenings by himself; that he asked her to marry him, but "she no say whoa for me"; that he asked her two or three times to marry him, but that she said

she was married 5 years. This evidence was given before an interpreter was called.

Defendant's evidence may be stated in narrative, without quotation marks, as follows: Mr. Jankowski and I are Polish; both speak Polish. I am a widow; have 7 children; my husband has been dead 9 years. I have known Mr. Jankowski for ▮▮▮ 2½ years; first met him at my home; he came to my house on Sunday afternoon with my neighbor; right away he asked me to marry him. I am a Catholic and it was then Lent and we could not get married then. He came to my home every week, sometimes every two weeks. He asked me 5 or 6 times to marry him, but I told him to wait because I was taking care of 4 children of my daughter whose husband was in the service. I agreed to marry him; we were to be married in the fall of 1944. I told him before he sold his property I expected to marry him. He told me he was going to give me everything he had; and that after he sold his property he would give the money to me. I told him he did not have to sell his property; that he had children and I had property; that if we got married he could live in my house. But he said he had an argument with his children and had decided to sell his property and bring me the money, which he did. Later, he told me he was going to give me the money for a wedding present and that I could do with it as I wanted.

After he gave me the money I told him I was going to look for a piece of property, and I did so and found the Fair Avenue property. I told him that if he was going to give me that money I would buy the property in my own name. I was really going to get married; I bought my wedding dress and he saw it. He asked me a couple of times I get my clothes; and I said, "If you don't believe me, I ain't supposed to show to you, and I show you anyhow", so I raised my dress to him; and he says, "Pretty nice." I did not marry him because he married some one else (plaintiff married another September 30, 1944). He didn't ask me to give the property back to him until after he married. Asked by the court about the marriage plans defendant said that the reason for not getting married at the time (when plaintiff was wanting to get married) was her grandchildren and her boarders.

The petition alleges that plaintiff and defendant went to a real estate office (naming it) to consummate the purchase of the property (describing it); that plaintiff paid the consideration, and that he "agreed that the title to said property should be held in the name of Sophie Delfert, defendant herein, upon her promise to deed said property to plaintiff at any time he might demand; . . . that he has demanded that said property be deeded to plaintiff by defendant, but that she has continually failed and refused to do so."

▮▮ The general types of resulting trusts recognized and enforced in equity are: (1) Where a purchase has been made and the legal estate is conveyed or transferred to one party but the purchase price is paid by

another party; (2) where a person standing in a fiduciary relation used fiduciary funds or assets to purchase property in his own or a third person's name; (3) where property is transferred without any consideration coming from the donee or grantee under such circumstances that he is considered as holding the property for the benefit of the donor or grantor; (4) where property is acquired by a person under circumstances which show that it is conveyed to him on the faith of his intention to hold it for or convey it to another, or to hold it for or convey it to the grantor or the grantor for another; and (5) the trust which arises in favor of the donor, or those claiming under him, where the trust is not fully declared, or fails, in whole or in part. Little v. Mettee et al., 338 Mo. 1223, 93 S. W. (2d) 1000, l. c. 1010.

As to when a resulting trust arises Restatement of Trusts, Sec. 404 says: "A resulting trust arises where a person makes a person or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of." And in Sec. 406, Restatement, it is stated: "Although by statute it is provided that all declarations or creations of trusts of land shall be manifested and proved by some writing signed by the party who is by law enabled to declare such a trust, no writing is required for the creation of a resulting trust." See also, Carr et al. v. Carroll (Mo. Sup.), 178 S. W. (2d) 435; Mays v. Jackson, 346 Mo. 1224, 145 S. W. (2d) 392.

It will be noted in the Little case, supra, that the first general type of resulting trusts recognized and enforced in equity is where a purchase of property has been made and the legal estate has been conveyed or transferred to one party, but the purchase price is paid by another party. The trial chancellor found against defendant on her claim of gift. The burden was on her to sustain this claim. Wilkerson et ux. v. Wann, 322 Mo. 842, 16 S. W. (2d) 72, l. c. 75, and cases there cited. If plaintiff did not give defendant the money, as she claims, then the first general types of resulting trusts as given in the Little case, supra, is, under the evidence, applicable here.

Sec. 3494 R. S. 1939, Mo. R.S.A., Sec. 3494, provides that "all declarations or creations of trust or confidence of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party who is, or shall be, by law, enabled to declare such trusts, or by his last will, in writing, or else they shall be void. . . ."

"Equity does not pretend to enforce verbal agreements in the face of the statute of frauds, and the person holding the legal title to real estate will not be decreed to be a constructive trustee, unless there is something more in the transaction than the mere violation of a parol agreement. Accordingly, the mere refusal of a trustee to execute an

express trust, or the denial of the existence of the trust by him, does not make a case for raising a constructive trust. And where a conveyance in trust is made voluntarily, without solicitation or undue influence, and no fraud is shown prior to, or contemporaneous with, the execution of the deed, but consists in denying and repudiating the agreement to reconvey, it will not remove the case from the operation of the statute of frauds." Long v. Conrad (Mo. Sup.), 42 S. W. (2d) 357, l. c. 361. See also Strype v. Lewis et al., 352 Mo. 1004, 180 S. W. (2d) 688. It is not necessary to deal with the subject of fraud as we shall presently see.

Plaintiff's case, in the situation that obtains, should be considered in the light of the evidence and not confined strictly to the petition. Except for objections to evidence to show an express trust, plaintiff's evidence went in without objection, and from plaintiff's evidence it is quite clear that he had no agreement with defendant that the deed would be made to her and thereafter the property would be conveyed to him, and the trial court, on issuable facts, found that plaintiff did not give the $7,000 to defendant as she claims. It is true that plaintiff pleaded, as appears supra, that he "agreed that the title to said property should be held in the name of Sophie Delfert, defendant herein, upon her promise to deed said property to plaintiff at any time he might demand." But such is not his evidence, which, as stated, went in without objection that such evidence was not competent under the pleadings. In such situation the petition will be considered as amended to conform to such evidence. Jenkins v. Kurn et al., 348 Mo. 942, 156 S. W. (2d) 668; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S. W. (2d) 723; Wooten et al. v. Friedberg, 355 Mo. 756, 198 S. W. (2d) 1. We rule that defendant held title under a resulting trust as the trial court found.

As we have pointed out, supra, the judgment is $100 excessive on the accounting wing of the case. This was due to an error in subtraction and should be corrected. Sec. 140 (c) of the code, Laws 1943, p. 395, provides, among other things, that the appellate court, in a situation such as here, we think, give such judgment as "shall seem agreeable to law." Under Sec. 140(c) we can correct the error in subtraction here. The judgment on the first count of the petition should be affirmed, and the judgment on the second count should be affirmed for $884.33. It is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bradley, C., is adopted as the opinion of the court. All the judges concur.