DAVID DECKER, Respondent, v. ERWIN H. FITTGE, as Administrator c.t.a. of Estate of ERWIN OSSING, Deceased, and NORMA O. BRAMON, Appellants, No. 44471—276 S. W. (2d) 144.

Division Two, March 14, 1955.

Louis B. Sher and Donald J. Sher for appellants.

Cook, Fairfield, Howard & Murphy and Joseph J. Howard for respondent.

[145] BOHLING, C.—David Decker, plaintiff-respondent, filed this suit in equity August 13, 1952, against [146] Erwin Ossing to establish a trust in what is known as 3711-13 Kossuth avenue, St. Louis, Missouri, arising out of a tax sale and deed. Erwin Ossing died December 9, 1952. Erwin H. Fittge, as administrator c. t. a. of the estate of Erwin Ossing, deceased, and Norma O. Bramon, his sole beneficiary who holds the legal title to said real estate, were substituted as parties defendant. The case was submitted on an agreed statement of facts and pleadings were filed to conform thereto. Jankowski v. Delfert, 356 Mo. 184, 201 S. W. 2d 331, 335[8, 9]. Plaintiff prayed for a decree vesting title in plaintiff and for general relief. Separate answers were filed by the defendants. The decree was for the plaintiff and defendants have appealed.

That the facts may be more readily understood, we mention that § 141.940(3), RSMo 1949, applicable to the tax sale involved, is to the effect, so far as material, that when the combined amount of prior liens for other taxes and the amount of the bid of the purchaser exceeds fifty per cent of the appraised value of the property, the tax sale is to be confirmed and the sheriff is to execute his deed to the purchaser.

In 1945 the City of St. Louis obtained a judgment for taxes on the real estate involved. The custom of the City is to hold such judgments without action until an offer is received for the property. Then the judgment and costs and costs of sale are estimated and a deposit is accepted with the understanding that upon a sale and payment

of the balance of any unpaid taxes against the property the deed is to be delivered.

It was the frequent practice of plaintiff-respondent to bid on and purchase property from the City of St. Louis in the above manner. He very seldom took the title in his own name. On several occasions he had purchased property at sheriff's sales and taken the title in the name of Erwin Ossing. Within a few months Ossing and his wife would transfer the title to plaintiff or his nominee. The property in question is the only exception to this procedure.

Plaintiff on May 5, 1950, advised Harry Budde, who handles such matters in the collector's office for the City, that he was interested in buying the property and, upon the costs being estimated at $850, plaintiff delivered his personal check to Harry Budde for $850, with the understanding the balance of the unpaid taxes would be paid upon the delivery of the deed. Execution was ordered and notice for sale on June 14, 1950, was published. On the day of sale, plaintiff, Erwin Ossing, a licensed attorney, and Harry Budde conferred with Edward Linahan, an employee of the sheriff's office in charge of all execution sales, and Budde advised Linahan that plaintiff had made the necessary deposit to bid the property in at the sale. Plaintiff was the sole and highest bidder and bid the property in for $855.51 at the sale conducted by Linahan, in the presence of Budde, Ossing and plaintiff. Plaintiff ''directed said Linahan to make the deed to Erwin Ossing.''

The sheriff's report of sale was duly filed in the circuit court, and the court appointed two disinterested appraisers on June 22, 1950, who, on July 5, 1950, filed their report appraising said real estate at $6,500. Said report of the appraisers was accompanied by a statement of the collector of revenue of the City showing the other general real estate taxes to which the property was subject. The circuit court found that the bid plus the subsequent taxes, etc., exceeded fifty per cent of said appraised value, approved the sale and authorized the sheriff to execute his deed to Erwin Ossing. The sheriff executed his deed to Erwin Ossing on August 17, 1950, and acknowledged the same in open court on August 22, 1950.

Both plaintiff and Ossing did business with the O. J. McCawley Realty Company. On May 5, 1950, Erwin Ossing sold some real estate through said realty company. On August 29, 1950, Erwin Ossing, without plaintiff being present, brought in his own check for $2,477.97, the amount of the balance of the taxes, penalties, interest, costs, etc., to Harry Budde, received said sheriff's deed, and had the same duly recorded. The $2,477.97 was received by Erwin Ossing from the sale of his property on May [147] 5, 1950. The real estate company mailed the sheriff's deed to Ossing on October 3, 1950.

The O. J. McCawley Realty Company collected the rents for plaintiff on at least ten parcels of real estate. Some of the parcels had been purchased by plaintiff at tax sales and held in the name of Erwin Os-

sing and were carried on the books of said realty company in the name of Erwin Ossing, with rent checks issued to said Ossing until the parcel was transferred to plaintiff or his nominee. The rent checks on such parcels, so issued to Ossing, were delivered to plaintiff, the owner. The books of the realty company show that the rent checks on the property in suit were remitted to Erwin Ossing prior to his death, and subsequent to his death to Norma O. Bramon; and said books also showed insurance $110.75, repairs $172.30, and taxes, water license and other expense $193.79 charged against Ossing's account. Ossing or his heir paid real estate taxes as follows: 1950, $106.85; 1951, $106.88; 1952, $108.37.

A letter received by Mr. Ossing from plaintiff's attorney is dated July 2, 1952. It mentions that the attorney had written to Mr. Ossing in December, 1951 "with reference to the property sold to you by Dave Decker," and shortly thereafter had spoken to him about the controversy, and had been informed by Ossing that he preferred to settle it with plaintiff personally, which was agreeable to the attorney. The letter also stated that Ossing had not settled with plaintiff and plaintiff insisted that it be "cleaned up"; that plaintiff had delivered to the attorney a cashier's check payable to Ossing for the amount Ossing had paid in and a deed to be executed by Ossing conveying the property to plaintiff; and that the attorney would have to follow plaintiff's instructions about suit if the matter was not settled, which the attorney thought "entirely unnecessary" and desired to avoid.

The record discloses, after adjusting the account between plaintiff and defendants with respect to the real estate involved, that there remains a balance due defendants of $757.97 from plaintiff as of the day of judgment in the event a trust be established, the plaintiff having made a deposit into court of a sufficient sum to pay said balance due defendants.

Plaintiff and defendants present the case on the theory of a resulting trust. Defendants contend plaintiff failed to carry the burden necessary for the decree in plaintiff's favor.

To establish a resulting trust by parol evidence the proof must be so clear, cogent, positive and convincing as to exclude every reasonable doubt of its existence from the mind of the chancellor. Norton v. Norton, Mo., 43 S. W. 2d 1024, 1032 [6]; Berry v. Hartzell, 91 Mo. 132, 136, 3 S. W. 582.

However, it has been well stated "that a resulting trust is founded upon 'the natural presumption, in the absence of rebutting circumstances, that he who supplies the purchase money intends the purchase to be for his own benefit, and not for another, and that the conveyance in the name of another is a matter of convenience and arrangement between the parties for collateral purposes.'" Carr v. Carroll, Mo., 178 S. W. 2d 435, 436[2], quoting Condit v. Maxwell,

142 Mo. 266, 274(I), 44 S. W. 467, 469(1). See also Jankowski v. Delfert, 356 Mo. 184, 201 S. W. 2d 331, 334[1-3].

"Where a transfer of property is made to one person and a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price, unless he manifests an intention that no resulting trust should arise or that a resulting trust to that extent should not arise." 2 Restatement, Trusts, § 454; Baumgartner v. Guessfeld, 38 Mo. 36, 41; Stevenson v. Smith, 189 Mo. 447, 466, 88 S. W. 86, 91; Wrightsman v. Rogers, 239 Mo. 417, 428, 144 S. W. 479, 482[2]; Hynds v. Hynds, 253 Mo. 20, 35(IV), 161 S. W. 812, 816(IV), 818[9]; Shelton v. Harrison, 182 Mo. App. 405, 167 S. W. 634.

[148] Defendants say that Ossing paid the major part of the consideration; that all of the consideration was paid before the delivery of the deed on August 29, 1950, and that no resulting trust was created by plaintiff theretofore paying the $850 or bidding in the property at the execution sale, stating "a resulting trust must arise, if at all, the instant the deed is taken." Jacobs v. Jacobs, Mo., 272 S. W. 2d 185, 189.

The source of the consideration is the foundation of a resulting trust, which has its origin in an agreement implied from the circumstances or established by proof. The trust, however, does not exist by virtue of an agreement. The intention of the parties at or before, not subsequent to, the acquisition of title determines the question of a purchase-money trust or no trust. The intention may be proved by parol. Milligan v. Bing, 341 Mo. 648, 108 S. W. 2d 108, 109 [1-4]; Mays v. Jackson, 346 Mo. 1224, 145 S. W. 2d 392, 399; Padgett v. Osborne, 359 Mo. 209, 221 S. W. 2d 210, 212[3]; Cloud v. Ivie, 28 Mo. 578; §§ 456.010, 456.030, RSMo 1949. The evidence of the terms of an oral agreement is offered not for the purpose of establishing an unenforceable express trust but to nullify the intention of a loan or gift and to indicate the disposition the real owner intended to make of the property; that is, that the title at the time of the delivery of the deed stood impressed with the trust. Smithsonian Institute v. Meech, 169 U. S. 398, 409, 18 S. Ct. 396, 42 L. Ed. 793; Wrightsman v. Rogers, supra; Shelton v. Harrison, 182 Mo. App. 404, 414, 167 S. W. 634, 636 [5, 6]; Scholle v. Laumann, Mo. App., 139 S. W. 2d 1067, 1069 [1, 2].

The agreed statement of facts clearly establishes that plaintiff discovered this property and was the originator of its sale that he might purchase it. He made the arrangements with the collector's office to that end and delivered his check for $850 as a deposit thereon with the understanding he would pay the balance of the unpaid taxes against the property when the deed was delivered. Plaintiff was the sole person entering into this agreement. The first knowledge Ossing

had of the transaction disclosed under the agreed facts was when he appeared with plaintiff at the bidding on the day of the sheriff's sale. At the sale the property was bid in by and sold to plaintiff. Plaintiff had theretofore placed the title of several parcels so purchased in the name of Ossing and in this instance he also instructed the sheriff to place the title in Ossing's name, the understanding being, so far as disclosed by the agreed facts, that plaintiff, as agreed with the collector's office, was obligated to and would pay the other taxes against the property and accept the delivery of the deed in Ossing's name. Under the authorities, up to when Ossing delivered his personal check on August 29, 1950, for $2,477.97, representing the balance of the taxes against the property, plaintiff was the beneficial owner of the agreed upon rights to the property, and upon Ossing accepting the deed his legal title stood impressed with a resulting trust for that portion of the total consideration paid by plaintiff.

The facts distinguish the instant case from the cases stressed by defendants, which involve the sufficiency of the evidence. In Chechik v. Koletsky, 311 Ill. 433, 143 N. E. 66, 33 A. L. R. 742, 745 (nearest in point), plaintiff, a real estate agent, relied upon a $300 down payment made when the contract for purchase was executed between the vendors and defendant-transferee, plaintiff's sister-in-law. The transferee had inspected the property in company with plaintiff before executing the contract and later closed the contract in accordance with its terms. The property was valued at $12,400 and the cash consideration was $3,000. There was testimony pro and con about evenly balanced as to whether the $300 was a loan to the transferee or a payment by plaintiff on the purchase price. Shelby v. Shelby, 357 Mo. 557, 209 S. W. 2d 896, 899, 900, involved indefinite contributions by five children of insubstantial parts of the purchase price of a home for the family in the name of the mother and the testimony thereon was indefinite and vague and not of the standard for decreeing a resulting trust. Consult [149] the authorities there cited, including Adams v. Adams, 348 Mo. 1041, 156 S. W. 2d 610, 614[6, 7, 10]. In Dee v. Sutter, Mo. App., 222 S. W. 2d 541, 543[6], there was a failure of proof that plaintiff made the payment involved. The facts in Ferguson v. Robinson, 258 Mo. 113, 167 S. W. 447, 452 et seq., are more detailed, but the gist of plaintiff's contention was that defendant had agreed to bid in certain property of plaintiff's at public sales with the understanding plaintiff was to pay defendant the amount expended therefor, interest on the expenditures, and a reasonable sum for defendant's services and receive the property from defendant. The testimony was in conflict and the trial court's holding that it was insufficient to establish plaintiff's contentions was upheld.

We are of the opinion that Ossing held that portion of the title represented by his payment of $2,477.97 as constructive trustee for the plaintiff.

Decrees are to be affirmed if the right result is reached in the trial court although the reason advanced for affirmance be not the correct ground for sustaining the decree. Brewster v. Terry, 352 Mo. 967, 180 S. W. 2d 600, 602[1]; Jackson v. Merz, Mo. App., 223 S. W. 2d 136, 138[8].

In Bispham, Equity, 4th Ed., 133, cited by defendants, is the following (taken from the note to Keech v. Sandford, 1 Lead. Cas. in Eq. 48, 1.c. 62): " 'Whenever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated.' " This is on the theory that a trustee, or one occupying a fiduciary or quasi-fiduciary position is precluded from gaining any personal advantage touching the subject of the trust or confidence.

For instance: In Tyler v. Tyler, 54 R. I. 254, 172 A. 820, a father's property had been sold on execution for $10. It was of considerable value and the purchaser's attorney informed him he could repurchase it for $250. The father tried to repurchase but could not find the attorney. He went to his son for advice and assistance and told him the situation. The son secretly purchased the property for himself and was held a constructive trustee for the father. He was not allowed to gain the advantage through an abuse of the confidential relation. See, among others, State ex rel. Duggan v. Kirkwood, 357 Mo. 325, 208 S. W. 2d 257, 259[1], 2 A. L. R. 2d 216, citing authority, which is in accord with Bispham, Equity, quoted supra; Black v. Gray, 411 Ill. 503, 104 N. E. 2d 212, 213[3-5]; 54 Am. Jur. 173, §§ 225, 226, 228; 65 C. J. 476, §§ 226, 227.

A confidential and fiduciary relation existed between plaintiff and Ossing. There is nothing in the agreed facts changing this relation up to the delivery of the deed. The forwarding of the rent checks to Ossing by the realty company, which acted as agent for both plaintiff and Ossing, was no more binding on plaintiff than on Ossing, there being no evidence as to what caused it so to do. There is no affirmative showing of objection by plaintiff to Ossing's action until December, 1951. Plaintiff's attorney then wrote Ossing and shortly thereafter saw him about the matter. Mr. Ossing died December 9, 1952. The agreed facts are dated December 14, 1953. Clearly plaintiff and Ossing had been friends, and plaintiff reposed confidence in Ossing. Plaintiff must have taken the matter up with Ossing prior to placing it with the attorney. Ossing stated to the attorney he desired to settle it with plaintiff personally, which the attorney preferred to have him do. The letter of July 2, 1952, notwithstanding an inadvertent use of the word sold, proceeds on the theory that Ossing held the title in trust for plaintiff, as the attorney states he held plaintiff's cashier's

check payable to Ossing for the amount he had paid in and a deed ready for execution by Ossing transferring the title to plaintiff. If the situation were not as outlined in the letter, the agreed facts do not disclose that Ossing made known any different contention. Ossing knew plaintiff [150] had paid $850 of the consideration for the property and plaintiff's position that he held the title in trust. Under the record Ossing's payment of the $2,477.97 was an abuse of the confidence plaintiff placed in him. He held the title represented by the $2,477.97 payment as a constructive trustee for plaintiff. This, as has been stated, is not necessarily because of an imputation of fraud, but because to permit him to retain the property thus procured would tend to induce fraud and would be against public policy upon the true owner doing equity. Van Raalte v. Epstein, 202 Mo. 173, 192, 99 S. W. 1077, 1081.

The decree was for the right party. It is affirmed. *Barrett* and *Stockard,* CC., concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. *Ellison,* P. J., *Leedy,* J., and *Dew,* Special Judge, concur.