Virginia BUTCHER and Janet McKemy, Appellants,

v.

Frances E. McCLINTOCK, Individually and as Executrix of the Estate of Vivian Ruth Feist, Deceased, First Presbyterian Church of Monett, a Corporation, Marguerite Wickline Casburn, John W. Casburn, Jr., Sue Ann Casburn, Erma Dusenbury Gray, George V. Feist, Respondents.

No. 49763.

Supreme Court of Missouri,

Division No. 1.

Dec. 9, 1963.

Motion for Rehearing or for Transfer to Court En Banc Denied Jan. 13, 1964.

Wm. J. Hill, Kansas City, for appellants.

James P. Aylward, Jr., Alpha N. Brown, Kansas City, Almon H. Maus, Monett, for respondents.

HYDE, Judge.

Action for specific performance of an oral contract to devise real and personal property or in the alternative to establish a constructive or resulting trust therein. The court found for defendants and plaintiffs have appealed.

The agreement pleaded was that the grandparents of plaintiffs, George E. Feist and Minnie R. Feist, made an oral family agreement, on March 31, 1941, with their three children, Vivian Ruth Feist, Vera L. Feist and George Van Feist (hereinafter referred to as Ruth, Vera and Van) for the disposition of all of their real and personal property. One reason for the family meeting at that time was the illness of Minnie Feist, who died May 20, 1941. George and Minnie Feist owned four residence properties in Monett, two of which they previously had conveyed to Vera and Ruth. On March 31, 1941, George and Minnie Feist conveyed the two lots, in their names, to Vera, Ruth and Van, and Vera and Ruth conveyed a one-third interest in the two lots, in their names, to Van so that each had a one-third interest in all four lots. It was alleged that each of them was to and did make wills providing as to Vera that her interest should go to Ruth or if Ruth did not survive her to plaintiffs (daughters of Van); providing as to Ruth that her interest should go to Vera or if Vera did not survive her, to plaintiffs; and providing as to Van that his interest should go to Vera and Ruth or the survivor of them. Van was named executor in his sisters' wills. George and Minnie Feist were to live in one of the houses and have the rent from the others. After the death of his wife, George Feist did live there until his death, May 22, 1943.

It was further alleged: "[I]t was agreed and understood that the said household furnishings and furniture, jewelry and other family personal property situated in the family homestead was, after the death of George E. Feist and Minnie R. Feist, to be kept intact in said homestead so that the said Vivian Ruth Feist, Vera L. Feist and George V. Feist would always have a home to which they could return, and so that said family household furnishings and furniture, jewelry and other family personal property, could be preserved, and would, by virtue of the aforementioned wills, upon the death of the survivor of Vivian Ruth Feist, Vera L. Feist and George V. Feist, remain in the family and become the sole and absolute property of plaintiffs."

Because plaintiffs' claim as third-party beneficiaries of this alleged oral contract, Van was permitted to testify about the oral contract over objections that he was disqualified by Sec. 491.010, RSMo V.A.M.S. Because of the view we take it is not necessary to consider this question, which defendants still raise.

After the death of their father, Van had nothing more to do with his sisters, he said because they had spoken disrespectfully of his wife at that time. Neither of the sisters were ever married; Vera, who taught school in Joplin, retired in 1947 and lived in the family residence until her death the next year. Previously, she had used it on week-ends and during the summers. She had made it a duplex and rented the upstairs part; she collected the rents for this and the other houses. After her death, the rents were collected by one of the tenants for Ruth, who lived in Kansas City. Van also lived in Kansas City where he was a practicing physician, his medical education having been financed by his father. In 1934, George and Minnie Feist had made separate wills, each leaving all property to the other for life with the remainder to Vera and Ruth or the survivor of them; and each leaving to Van five dollars. In 1937, Minnie Feist made another will disposing of personal property only, giving Van only a silver pitcher given to her by him and giving all other personal property

to Vera and Ruth, designating her diamond ring to go to Vera. Soon after this will was made, George and Minnie Feist attempted to create an estate by entirety in all four properties but the title to two of them was in Vera and Ruth, having been conveyed to them in 1935. The will of George Feist was probated but his estate showed no assets. Van did not attempt to act as executor of Vera's estate, the letters issued to a Monett lawyer stating "executor named in said will having failed and refused to act." The order of distribution in Vera's estate declared Ruth to be entitled to all her property.

Ruth died January 14, 1958, and her will of May 28, 1957, revoking her previous will, left her property to the defendants other than Van. Before her last will was executed, Van had gone to Monett and removed furniture and other personal property from the residence. He said, in 1955, he went to the house for the first time after his father's death and found everything in order. He went back the next year and found the house dirty and open to all comers. He said "the lady upstairs was ill and could not look after it." He said: "I took the steps to remove the items that were, that had any value, either sentimental or real, to take them up to my home to preserve them." He took some home in his car and came back the next week with a trailer for more. He said: "[T]he furniture I had rebuilt, and the silver I had refinished" and "divided it among my two children." He said he wrote Ruth telling her what he had done and she employed a lawyer who "spoke very harshly about me removing these items"; but said after a conference with her lawyer "the matter was dropped."

Defendants' evidence was that when Van went to Monett in 1956 the wife of the upstairs tenant was dying of cancer and he was using the downstairs with Ruth's permission; also that Ruth came there frequently, staying week-ends or a few days and never did stay away as long as six months. The upstairs tenants took care of the house for Ruth and collected her rents. It was also shown that after Van had been there in 1956, the living room and back bedroom antique furniture had been removed, also silver and dishes from the china cabinet; a list was in evidence of 55 articles of furniture, bedding, china, silver and other items missing, after Van's visits, made by Ruth and defendant Mrs. McClintock, who had often come there with her in previous years. Other facts will be stated in connection with our rulings.

Plaintiffs say "this action is not to enforce a contract 'not to revoke' the 1941 will of Ruth Feist. Instead, it is to enforce the oral contract to devise, only as to the family property." They rely on such cases as Jackson v. Tibbling, Mo.Sup., 310 S.W.2d 909, 915; Decker v. Fittge, 365 Mo. 139, 276 S.W.2d 144, 148; Shackleford v. Edwards, Mo.Sup., 278 S.W.2d 775; Bennington v. McClintick, Mo.Sup., 253 S.W.2d 132, 134; Wanger v. Marr, 257 Mo. 482, 165 S.W. 1027, 1029; Plemmons v. Pemberton, 346 Mo. 45, 139 S.W.2d 910, 916; Bealmear v. Beeson, Mo.App., 263 S.W.2d 472, 477; Janssen v. Christian, Mo.App., 57 S.W.2d 692, 693. Plaintiffs argue, in addition to Van's testimony, as circumstantial evidence, of such an agreement, the facts that deeds were made to give each of the Feist children a one-third interest in the real estate; that three wills were made in the same form; that all deeds and wills were prepared by the same lawyer; that these changed preferences by earlier deeds for Vera and Ruth over Van; and that the acts of the parties through the years showed performance in accordance with the alleged oral agreement. Plaintiffs also argue as admissions by Ruth in a letter soon after Vera died that she would like to buy off Van but that could have meant she wanted to buy his one-third interest in the real estate.

■ The requirements for establishing and enforcing an oral contract to convey or devise real estate were established by the leading case of Walker v. Bohannan, 243

Mo. 119, 136, 147 S.W. 1024, 1028, as follows: "(1) [T]he alleged oral contract must be clear, explicit, and definite; (2) it must be proven as pleaded; (3) such contract cannot be established by conversations either too ancient on the one hand, or too loose or casual upon the other; (4) the alleged oral contract must itself be fair, and not unconscionable; (5) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged was in fact made and that the full performance, so far as lies in the hands of the parties to perform, has been had; (6) and the work constituting performance must be such as is referable solely to the contract sought to be enforced and not such as might be reasonably referable to some other and different contract; (7) the contract must be one based upon an adequate and legal consideration, so that its performance upon the one hand, but not upon the other, would bespeak an unconscionable advantage and wrong, demanding in good conscience relief in equity; (8) proof of mere disposition to devise by will or convey by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed made before the acts of performance relied upon were had."

■ Our conclusion is that plaintiffs' proof does not meet these standards. In the first place, the trial court in a memorandum opinion stated it could not "attach too much credibility" to Van's testimony, because of his bitter long-time animosity toward his sisters (continuing from the time of their father's death) especially "concerning property which apparently was the principal cause of the ill feeling." As to the reason for the Feist family conference of March 1941, the trial court noted "that sometime prior to that conference the parents had deeded certain real estate to Vera and Vivien Ruth, and George Van had learned of this." The result of the conference was that Van did not give up anything but instead got more than he had

before, without assuming an obligation of any kind, except to make a will devising his one-third interest (just received) to his sisters (who did give up a one-third interest in the lots to which they held title) if they or either of them survived him. The trial court's conclusion about a contract to devise all family property was: "The appellate courts have time after time either required such an agreement to be proved so as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged was in fact made or that the testimony must be clear, cogent, positive and convincing so as to exclude every reasonable doubt. This Court does not feel that the testimony in this case meets those standards, and therefore the finding of the Court must be in favor of the defendants."

We reach the same conclusion. As the trial court stated much of Van's testimony consisted of "conclusions and general statements"; also much of it was conflicting and inconsistent and defendants produced evidence, particularly as to identification of personal property, which we agree with, the trial court was more credible. Therefore, we do not find the proof of the alleged oral contract to "be clear, explicit and definite."

In any event, the evidence shows a flagrant violation of the alleged contract by Van and plaintiffs, as Van had stated it to be. Van's testimony was that, when he and his sisters met with their parents in March 1941, his father said their mother was "worried about the disposition of the property that they had in relationship to the two daughters who were not married and that in order for her to have peace of mind and not be upset, he wanted to discuss with us how the property that they had accumulated over the years, could be taken care of and preserved for the future welfare of my two sisters." He further testified: "Q. Now, what was to be done with the properties, that is, the four real properties and the furniture and furnishings in the household and the jewelry in question in the meantime? A. Well, it was a stipulation of my

parents that it be left intact so that it could always be there in case one of the children desired or wished or had to go back there to live. * * * [I]t would be available to any one of the children, if they ever had to go back, due to illness or otherwise being in trouble, having a place to live." Nevertheless, 15 years later, when it would have been reasonable to believe that Ruth, because of her frequent use of the property, would eventually retire from her position in Kansas City and use the place as a home, Van took away and plaintiffs received and kept the most valuable and necessary part of the furniture and household furnishings, including some of Ruth's personal property according to defendants' evidence. In doing this, they left the place in such condition that Ruth could not "go back there to live" without refurnishing it from her own means. Certainly this was not preserving the property for the future welfare of his sister.

Moreover, Van said he had lost the will he made in March 1941, when he and his sisters made similar wills, and had in 1954 executed a revised will. Although Van stated his conclusion that "the proviso of my will was in keeping with the agreement that my parents wanted," he refused to produce his 1954 will or tell what it provided. Certainly this lacks much of being such proof as to leave no reasonable doubt in the mind of the chancellor "that full performance, so far as it lies in the hands of the parties to perform, has been had," on the part of Van.

In Walker v. Bohannan, supra (243 Mo. 1. c. 137), the guiding principles for the application of the requirements set out therein are thus stated: "It is only where the very justice of the thing is so clear that the refusal of relief would itself amount to a deep seated wrong and fraud upon the party that courts of equity will act, * * *. The wholesale enforcement of such contracts would bring more absolute wrongs than the absolute denial of relief in all such cases." We can find no deep-seated wrong

to plaintiffs or Van in refusal of the relief sought.

As to plaintiffs' alternate trust theory, the cases cited by them are not applicable. For example, in Jackson v. Tibbling, supra, a constructive trust was declared on the rules quoted (310 S.W.2d l. c. 915) from the American Law Institute Restatement of Restitution, Sec. 182, where the plaintiff therein had conveyed property she owned to another with the understanding that he would leave it to her by his will, but instead he conveyed it to his daughter. In Decker v. Fittge, supra, where a resulting trust was declared on the principle stated (276 S.W.2d l. c. 147) in the American Law Institute Restatement of Trusts, Sec. 454, and the cases cited, that where a person made a payment on the purchase price of property and had it conveyed to another a resulting trust may be declared in favor of such person. In Janssen v. Christian, supra (57 S.W.2d 692), real estate had been conveyed to one child by her father under an agreement that she would pay her brothers the amount necessary to give each of them the $3000.00 bequests given them by his will if his other assets were insufficient. The real estate involved was impressed with a trust for this purpose. In this case Van never had any prior ownership in any of the property involved and had not paid anything toward its acquisition. Moreover, his parents had made wills leaving all their property to his sisters which they did not revoke although there was no real estate left to be devised. Even from Van's testimony, it appears their main concern and purpose was to provide for their daughters, Van being a well-established physician. Under all the circumstances, we do not find sufficient grounds for declaration of a trust.

Plaintiffs further claim the court improperly refused to receive in evidence a letter written to Van's lawyer by a lawyer for Ruth after Van had taken the furniture and household furnishings from the house in Monett, inquiring what Van

had provided by will as to his one-third interest in the Monett property. Plaintiffs claim this letter is evidence of the alleged agreement. In this court-tried case, "the appellate court considers such of the evidence as it deems admissible, and excludes from consideration evidence improperly admitted." Hussey v. Robison, Mo.Sup., 285 S.W.2d 603, 604; Rule 73.01(d), V.A.M.R. Nothing in that letter could change our views hereinabove expressed.

The judgment is affirmed.

All concur.